713 P.2d 1245

**In re the Marriage of E. David KOELSCH, Petitioner-Appellee,**

v.

**Elizabeth R. KOELSCH, Respondent-Appellant.**

No. 1 CA–CIV 6091.

Court of Appeals of Arizona, Division 1, Department D.

Feb. 28, 1984.

Stevens & Leibow, P.C. by Charles T. Stevens, Phoenix, for petitioner-appellee.

George M. Sterling, Jr., Phoenix, for respondent-appellant.

## OPINION

JACOBSON, Chief Judge.

This appeal again presents the thorny issue of the proper distribution upon dissolution of a marriage of the community interest in retirement benefits, particularly where such benefits have both vested and matured. "Matured" means that the employee has met all prerequisites including length of service to make him immediately eligible to receive benefits. *Johnson v. Johnson*, 131 Ariz. 38, 638 P.2d 705 (1981). The facts are not in material dispute.

The parties were married on November 22, 1956, and thereafter the husband, E. David Koelsch, was employed by the Department of Public Safety. Under the Public Safety Personnel Retirement Fund, he was eligible for retirement after twenty years of service, and that point was reached on August 16, 1981. On October 17, 1980, the husband filed a petition to dissolve his marriage to Elizabeth R. Koelsch. A decree dissolving the marriage was entered on April 16, 1981, which provided in part:

> With respect to the Public Safety Retirement Fund said property is the community property of the parties and there

is hereby set aside to the respondent as her sole and separate property, a sum equal to one-half of the amount which is determined after calculating the fraction by which 234 is the numerator and the total months of enrollment is the denominator. Said sum shall be paid to the respondent at the same time and in the same manner as it is paid to [p]etitioner.

At the time of the dissolution, the husband was 44 years old and had recently been promoted to supervise security at the Arizona State Senate, a position that he enjoys and wants to keep. Under the provisions of the husband's retirement plan, if he retires after twenty years of service he would receive benefits equal to 50% of his annual salary averaged over the five years when his earnings were highest. However, if he continued to work after twenty years, his retirement benefits would increase by 1% per year from the base of 50% of his salary to a maximum of 60% at the end of thirty years. There are no minimum age limits to obtain retirement benefits nor are there any limitations on obtaining other employment after retirement, except the retiree cannot receive retirement benefits if he is hired by another employer covered under the Public Safety Retirement Fund. The death of the employee terminates retirement benefits, and survivor's benefits are specifically restricted to married spouses. It was agreed that if the husband retired on August 16, 1981, after twenty years of service, he would receive a retirement benefit of $867.01 per month. At that time he would have a life expectancy of 24.4 years.

The sole issue on appeal is whether the trial court properly disposed of the community interest in the retirement fund. The wife agrees that the trial court's formula in determining the community interest in the retirement plan was in conformity with that used in *Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214 (1977), and that the lack of other community assets to "buy out" the community interest in the retirement plan made immaterial a determination of present cash value of that interest. *See Johnson v. Johnson, supra; Provinzano v. Provinzano*, 116 Ariz. 571, 570 P.2d 513 (App.1977). The supreme court in *Van Loan* held that a wife had an interest in her husband's military pension to the extent that the same derived from community labor. This was true even though the pension had not vested. Since the portion of the pension that derived from the husband's labor following dissolution would not be community property, a formula was devised to fix the community interest. During the entire seventeen years of marriage, the husband had been serving in the U.S. Air Force. The trial court awarded the wife an interest in the pension equal to one-half of the amount derived from the division of seventeen by the number of years the husband would have served in the U.S. Air Force if and when he received the pension.

The wife argues that the formula for calculating the community interest in future retirement benefits acceded to in *Van Loan* and its progeny[1] presupposes that the onset of benefits and their amount was independent of either party's control, that is, it presupposes that when eligibility for retirement arrives, retirement will occur. She argues that when this factor is not present and instead, because of youth or other reasons employment continues after the date of eligibility for retirement it is inequitable to allow, in the sole discretion of the spouse covered by the plan, a diminution of the other spouse's interest in the retirement benefits.

The wife is correct in her observation that the longer the husband continues his employment after the dissolution the wife's share in the benefits will grow progressively less. This is true because under the *Van Loan* formula the number of years the husband serves to obtain the pension grows while the number of years the com-

---

**1.** *See Johnson v. Johnson, supra; Luna v. Luna*, 125 Ariz. 120, 608 P.2d 57 (App.1979); *Kreimeyer v. Kreimeyer*, 125 Ariz. 16, 606 P.2d 834 (App.1979); *Czarnecki v. Czarnecki*, 123 Ariz. 466, 600 P.2d 1098 (1979).

munity labor contributed to the pension is static. By way of illustration, in this case if the husband had retired in 1981 the wife, under the *Van Loan* formula would be entitled to one-half of 97.5% of the pension payments.[2] If the husband waits until 1991 to retire the wife would receive one-half of 65% of the pension he receives.[3] To put the matter in even more concrete terms, if we assume an annual salary increase of 5% (a figure by which the state historically has increased wages) at retirement after thirty years, the wife would receive a monthly benefit of $556.78 per month as compared to the sum of $422.67 per month if retirement occurred after twenty years. However, if the husband retired after twenty years he would have had a life expectancy of 28.6 years which would produce for the wife, over his lifetime, the sum of $145,060 ($422.67 per month × 28.6 years). If retirement is deferred for ten years the husband's life expectancy would be 20.4 years so the wife's total income from the benefits over the husband's lifetime would amount to $134,830 ($550.78 per month × 20.4 years), a net decrease in the total amount of benefits the wife could reasonably be expected to receive.

The wife also argues that while it may be equitable for both parties to share the risk of untimely death and consequent loss of any benefits where rights under the pension plan have not matured, it is inequitable to shift this risk solely to the wife where the husband controls the timing of when benefits can be received. She urges that these inequities mandate our adoption of the approach taken by California in the case of *In re Marriage of Gillmore*, 29 Cal.3d 418, 174 Cal.Rptr. 493, 629 P.2d 1 (1981). There the California Supreme Court was faced with the same fact situation presented by this case, that is, a working spouse who is eligible to retire but wants to continue working, thus postponing the collection of retirement benefits. The California Supreme Court held:

> [The husband's] retirement benefits are both vested and matured. [Citations omitted]. He will not forfeit his benefits if he leaves his employment voluntarily, is terminated or retires. The only condition precedent to payment of the benefits is his retirement, a condition totally within his control. A unilateral choice to postpone retirement cannot be manipulated so as to impair a spouse's interest in those retirement benefits. 174 Cal. Rptr. at 496, 629 P.2d at 4.

The California court, therefore, ordered that the husband who continued working in the job covered by the retirement plan immediately pay to the wife a sum equal to what the wife would have been entitled to had the husband retired when first eligible.

The husband contends that requiring him to pay his wife $422.67 per month right away (the sum to which she would be entitled if he retired on August 16, 1981) would, as a practical matter, require his immediate retirement from his life's work. He points out that because of other financial conditions imposed by the decree of dissolution, he would have to retire and seek other employment in order to financially afford a $422.67 per month payment to his ex-wife.

He also argues that his continued employment, with the attendant increase in salary and benefits will result in his wife actually receiving an increased benefit when he does eventually retire. As we have demonstrated above, this latter argument may or may not be correct, depending upon when the husband actually chooses to retire. As a final argument the husband urges that requiring him to pay now on income he will not receive until some time in the future, places the wife in a better position than if they had remained married, a condition he perceives to be unjust.

---

**2.** Calculated as follows, 234 months of marriage while the husband was employed by the Department of Public Safety divided by 240 months of eligibility until retirement.

**3.** Calculated as follows, 234 months of marriage while the husband was employed divided by 360 months until retirement.

These contentions require us to analyze the basic principles underlying the formula utilized in assessing the community interest in retirement benefits. While the *Van Loan* formula may be satisfactory in many situations it should certainly not be the only method of arriving at a solution to the problem. The *Domestic Relations Handbook, Maricopa County Superior Court, Arizona* (Rev. April 1, 1980), Guideline IX, touches on how such formulas can be varied. It notes:

> In most cases involving deferred compensation plans, too many contingencies exist to accurately determine the benefits to be provided thereby. In addition, the benefits are normally deferred and therefore incapable of present delivery to either spouse. Therefore the following policy is adopted.
>
> *Policy:* The benefits will be divided between the spouses based upon the period of marriage of the parties as this period relates to the period of *accrual of benefits* under the deferred compensation plan, with valuation and payment determinations being deferred until the benefits become payable ... (Emphasis added.)

Thus, any formula applied should take into account the fact that information to evaluate the plan may be lacking, the possibility that community labor was not invested in bringing the plan to fruition, and the recognition that benefits have not matured under the plan. This is completely in keeping with community property principles that the community is not entitled to labor expended either before a marriage or after the marriage has been dissolved. *Garrett v. Garrett*, 140 Ariz. 564, 683 P.2d 1166 (1983).

The formula of dividing years of marriage under the plan by the years necessary to mature the benefits is sound if, in fact, the plan has not matured, because the covered spouse must continue working to obtain the promised benefits and thus realize the community asset. However, to keep this formula equitably sound if the covered spouse is given the option of not retiring at a set time, the outer limits of the denominator (the number of years necessary to mature benefits) must be limited to what it represents, that is, the date when the covered spouse is first entitled to benefits. While the law may equitably require the interest of a spouse not working in the job covered by the retirement plan to be determined on the basis of what community labor bears to ultimate labor required to bring an asset to fruition, once that fruition is or could be accomplished, the value of the community interest should become fixed. One spouse should not be able, by invoking a condition solely within his or her control, to either defeat or diminish the community interest of the other spouse.

▮ We therefore hold that the formula for determining a community interest in a deferred retirement plan under the circumstances presented here, should have as a denominator a figure which is limited by the minimum number of months necessary to enable the covered spouse to begin receiving benefits under the plan. *In re Marriage of Vinson*, 48 Or.App. 283, 616 P.2d 1180 (1980). In the case before us, as previously illustrated, that will amount to one-half of 97.5% of the benefits ultimately paid. The trial court's order in this case, which used a denominator based upon the number of months actually worked rather than the number of months necessary to bring the plan to maturity, works an inequity.

▮ This brings us to a determination of when the non-working spouse is entitled to receive those benefits—upon first maturity, as California holds, or when benefits are actually paid under the plan, as the trial court ordered here. We realize that competing interests are involved. On the one hand, there is the non-covered spouse's interest in obtaining, as soon as possible, the benefits of an asset which the community labored to produce. On the other hand, the covered spouse has a legitimate interest in continuing the pursuit of a rewarding career. As we have already observed, the California court resolved this problem by

saying that the husband was always free to keep on working so long as he paid his wife what she would receive if he had retired. This resolution is one option that can always be considered, but in many cases it would ignore reality and work an injustice.

While it very well may be that under certain circumstances a spouse covered by the plan can continue working and also pay a retirement benefit to the ex-spouse, as a practical matter, in many situations the effect of an immediate payment order would require a forced retirement and search for other employment. Disruption of life styles caused by a dissolution should be kept to a minimum and should, whenever possible, not control how divorced individuals conduct their lives after dissolution. The better practice is to disengage the parties from the ties of the previous marriage as soon as practically feasible and that where circumstances permit, the one spouse should receive his or her entitlement to retirement benefits as soon as they mature,[4] regardless of whether the spouse covered by the retirement plan wants to retire. However, where bona fide reasons exist for the covered spouse to continue working and thus deferring the enjoyment of benefits, we believe that the resolution of the competing interests involved requires that the percentage of the spouse whose interest is not covered by the plan be fixed as of the date that the benefits would mature, but that enjoyment of those benefits be postponed until retirement of the spouse who is covered by the plan actually occurs. In such a case, in consideration of the one spouse foregoing the present enjoyment of the benefits, he or she will share in any increase in benefits that continued employment will produce, including increase in pension benefits and salary.[5] The covered spouse who now has complete control of the time when benefits will be received may continue to work and reap the rewards thereof, but does so with

the knowledge that the ex-spouse's interest in retirement benefits is fixed and that he or she will share in what the continued employment may produce.

We know that our solution is not perfect. However, the guidelines set forth here do provide a framework within which the courts and the parties may seek more equitable solutions. It is apparent that the trial court here was not presented with, nor did it consider the principles we have set forth. For that reason, the judgment is reversed and this matter is remanded for further proceedings.

KLEINSCHMIDT, P.J., and GREER, J., concur.

---

4. In such a case, spousal maintenance may not be appropriate.

5. Using the same assumptions as were previously made concerning annual salary increases and

continued employment for an additional ten years, the wife will receive a monthly benefit of $826.28 per month and over the life expectancy of the husband, the sum of $142,781.32.