713 P.2d 1234

**In re the Marriage of E. David KOELSCH, Petitioner-Appellee,**

v.

**Elizabeth R. KOELSCH, Respondent-Appellant.**

**Ann Angela HAYNES, Petitioner, Appellee, Cross-Appellant,**

v.

**David Lee HAYNES, Respondent, Appellant, Cross-Appellee.**

**Ann Angela HAYNES, Petitioner, Appellee, Cross-Appellant,**

v.

**PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEM and the Fund Manager; Phoenix Police Pension Board, Appellants, Cross-Appellee.**

**Nos. 17483–PR, 17868–PR.**

Supreme Court of Arizona, En Banc.

Jan. 28, 1986.

Stevens & Leibow by Charles T. Stevens, Phoenix, for petitioner-appellee David Koelsch.

George M. Sterling, Jr., Phoenix, for respondent-appellant Elizabeth Koelsch.

Galasky & Meador by Andrew G. Galasky, Phoenix, for petitioner, appellee, cross-appellant, Ann Haynes.

Lewis and Roca by Jeremy E. Butler, Paul G. Ulrich, Dale A. Danneman, David Lee Titterington, Phoenix, for respondent, appellant, cross-appellee, David Haynes.

Napier & Jones by Robert E. Jones, Jr., Phoenix, for Phoenix Police Pension Bd.

Snell & Wilmer by Thomas J. Kennedy, Bruce K. Pingree, Michael P. Anthony, William R. Hayden, Tibor Nagy, Jr., Phoenix,

for amicus curiae, and Public Safety Retirement/Fund Manager.

## HOLOHAN, Chief Justice.

We have consolidated these cases for decision since they present the same issues concerning the divisibility of Public Safety Personnel Retirement System benefits upon dissolution. In both cases the Arizona Court of Appeals reversed the trial court's resolution and remanded for further proceedings. We granted review in both cases to clarify this specific area of community property law. We have jurisdiction pursuant to A.R.S. § 12–120.24 and Rule 23, Ariz.R.Civ.App.Proc., 17A A.R.S.

The facts in both cases are essentially undisputed.[1] In *Koelsch v. Koelsch,* No. 17483–PR, the husband, David, and the wife, Elizabeth, were divorced in 1981 after twenty-five years of marriage. At the time of the dissolution, David was six months from being eligible to receive a pension for his work with the Department of Public Safety. Pursuant to the provisions of the Public Safety Personnel Retirement System, A.R.S. § 38–841 through –855, he was eligible to retire and receive a monthly pension benefit after twenty years of service. A.R.S. §§ 38–844(A), 38–842(19). David was forty-four years old at the time and had recently been promoted to a job he enjoyed and wished to keep. He chose to continue working, thus delaying receipt of the benefits. The statute provides that benefits will increase if the employee continues working after the normal retirement date of twenty years of service. A.R.S. § 38–845(A)(2). If David had retired after twenty years of service, he would have received a monthly benefit of $867.01. The statute restricts death

benefits to current spouses and children. A.R.S. § 38–846.

The trial court applied the so-called *Van Loan* formula to determine Elizabeth's community property share of the pension benefit. The dissolution decree provided in part:

> With respect to the Public Safety Retirement Fund said property is the community property of the parties and there is hereby set aside to the respondent as her sole and separate property, a sum equal to one-half of the amount which is determined after calculating the fraction by which 234 [the number of months David and Elizabeth were married while David was a member of the System] is the numerator and the total months of enrollment is the denominator. Said sum shall be paid to the respondent at the same time and in the same manner as it is paid to [p]etitioner.

Elizabeth argued before the court of appeals that when community property retirement benefits are vested and matured,[2] it is inequitable to place in the employee spouse the sole discretion when the benefits will be paid. She argued that her share of the property would be diminished if David were to work for another ten years and possibly defeated if he were to die before he retired. She sought an order requiring David to pay her a monthly amount equal to the amount she would receive if he would have retired after twenty years. David argued that requiring him to pay Elizabeth $422.67 per month would force him to retire and find another job.

The court of appeals, in an effort to serve the interests of both parties, suggested the following compromise:

1. For a more detailed version of the facts, see the opinions of the court of appeals. *Koelsch v. Koelsch,* 148 Ariz. 187, 713 P.2d 1245 (App.1984); *Haynes v. Haynes,* 148 Ariz. 191, 713 P.2d 1249 (App.1984).

2. In *Johnson v. Johnson,* 131 Ariz. 38, 41 n. 2, 638 P.2d 705, 708 n. 2 (1981), we defined a vested pension as "one in which the right to be paid is not subject to forfeiture if the employment relationship terminates before the employ-

ee retires," and a matured pension as an "unconditional right[ ] to immediate payment." In the instant case the only factor preventing the immediate payment of the monthly benefits is the employee's refusal to retire. The recently enacted A.R.S. § 38–844.01, which provides for vesting only after the employee has applied for benefits and is found eligible, does not affect our analysis in this case.

[W]e believe that the resolution of the competing interests involved requires that the percentage of the spouse whose interest is not covered by the plan be fixed as of the date that the benefits would mature, but that enjoyment of those benefits be postponed until retirement of the spouse who is covered by the plan actually occurs. In such a case, in consideration of the one spouse foregoing the present enjoyment of the benefits, he or she will share in any increase in benefits that continued employment will produce, including increase in pension benefits and salary. The covered spouse who now has complete control of the time when benefits will be received may continue to work and reap the rewards thereof, but does so with the knowledge that the ex-spouse's interest in retirement benefits is fixed and that he or she will share in what the continued employment will produce. [footnotes deleted]

*Koelsch*, 148 Ariz. at 191, 713 P.2d at 1249.

In his petition for review, David argues that the new formula proposed by the court of appeals does not fairly treat separate earning contributions to the plan and that the formula used by the trial court should be reinstated. In her cross-petition, Elizabeth renews her argument that the unilateral control of the pension benefits by the employee is unfair. We granted both the petition and the cross petition for review.

The factual setting in Haynes v. Haynes, No. 17868–PR, is very similar. The employee husband, David, and his wife, Ann, were divorced after twenty-five years of marriage. David had worked for the Phoenix police force for over twenty years and was eligible to retire before the date of dissolution. As of January 1, 1981, the retirement benefit, if taken, would have been $1,327.00 per month for the rest of David's life. David, however, chose to continue working rather than retire. Ann sought affirmative relief in the trial court against the Public Safety Personnel Retirement System and its Fund Manager and

the Police Pension Board (retirement agencies) in connection with any retirement benefits payable. They were thus made parties to the action. The trial court held that the pension benefits were divisible community property and applied the *Van Loan* formula to determine Ann's share. It also ruled that at such time as benefits were payable under the plan, the Retirement System was to pay Ann's interest directly to her.

On appeal, the retirement agencies and David Haynes argued that retirement benefits are not divisible community property. The agencies contended that if the benefits were community property, the trial court erred in not offsetting Ann's share with other community property. The court of appeals ruled that retirement benefits are community property, that the System should pay non-employee spouses their shares directly, and that in this case there was no community property of sufficient value to offset the pension benefit.

David and Ann also challenged the valuation and timing of payment of Ann's share of the benefits, raising essentially the same arguments raised in *Koelsch*. The court of appeals reversed and remanded the case to the trial court on the authority of its prior holding in *Koelsch*.

The retirement agencies, David, and Ann all sought review in this court. The agencies argue that benefits payable under the Public Personnel Retirement System are indivisible, and that even if such benefits are divisible, they may only be divided after receipt by the employee spouse. David argues that the retirement benefits are not community property and that the *Koelsch* formula impermissibly grants an ex-spouse increases in benefits earned after dissolution. Ann argues that it is inequitable to force her to wait until David decides to retire to collect her share of the retirement benefits. We granted all three petitions so that there will be a definitive ruling on these important issues of statewide concern by the highest court of the state.[3]

3. David Haynes argued before the court of appeals that the superior court, and consequently

## I. DIVISIBILITY OF PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEM BENEFITS AS COMMUNITY PROPERTY

■ Both the retirement agencies and David Haynes argue that retirement benefits payable under the Public Safety Personnel Retirement System are not community property subject to division by the court at dissolution. They assert that the statutory provisions of A.R.S. §§ 38–841 through –855 preclude division of retirement benefits as community property. We granted review on this issue explicitly to affirm the reasoning and holding of the court of appeals in *Haynes v. Haynes,* 148 Ariz. 191, 195, 713 P.2d 1249, 1253 (1984). First, we agree that "the retirement benefits provided under the system are deferred compensation for services previously rendered and are therefore property acquired during marriage." *Id.* at 196, 713 P.2d at 1254.[4] Second, we agree that while the reasoning of the United States Supreme Court in *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), and *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), "may have some validity when that court is interpreting legislation which is national in scope and affects both community property states and common law states, that reasoning loses its persuasiveness when ascertaining the intent of a legislature in a community property state." *Haynes,* 148 Ariz. at 196, 713 P.2d at 1254. We also agree that "the inquiry should be ... whether the legislature in clear and unequivocal language intended to deprive the ex-spouse of a community interest in property acquired during marriage," *Id.* at 196, 713 P.2d at 1254, and find in the statutory scheme no such language. Finally, we agree that the anti-alienation provision of A.R.S. § 38–850(C) is not applicable to satisfaction of the ownership interest of the non-employee spouse.

## II. SATISFACTION OF NON-EMPLOYEE SPOUSE'S PROPERTY INTEREST

The question before us is how and when a non-employee spouse's community property interest in an employee spouse's matured retirement benefit plan is to be paid when the employee wants to continue working, thus delaying receipt of the retirement benefits. The issue is one of first impression in this state. Our courts have considered valuation of the non-employee spouse's interest when the benefits are not yet matured, *Johnson v. Johnson,* 131 Ariz. 38, 638 P.2d 705 (1981), and when the employee spouse had already retired and was receiving benefits, *Czarnecki v. Czarnecki,* 123 Ariz. 478, 600 P.2d 1110 (App. 1978), *approved* 123 Ariz. 466, 600 P.2d 1098 (1979). In *Van Loan v. Van Loan,*

---

the court of appeals and this court, had no jurisdiction to consider this case. Although the court of appeals implicitly rejected this argument by ruling on the merits of the case, it did not address this contention in its opinion. The argument is that A.R.S. § 38–847 sets up a system of local boards to "decide all questions of eligibility and service credits, and determine the amount, manner and time of payments of any benefits under the system," A.R.S. § 38–847(D)(1), and that any question concerning the payment of benefits under the System must first be presented to a local board, A.R.S. § 38–847(J). We find no merit to this argument. While the local boards may have jurisdiction to decide specific questions concerning the administration of the System, their power does not extend to ruling on questions of Arizona community property law.

**4.** The court of appeals' opinion did not address David Haynes' argument that since membership in the Retirement System is limited to those who engage in public service jobs that entail exposure to hazardous duty, the compensation provided is really for an invasion of the right to personal security. In *Jurek v. Jurek,* 124 Ariz. 596, 606 P.2d 812 (1980), we held that recoveries for personal injuries were separate property since a spouse brings the right to personal security into the marriage. Compensation for bodily injury is different from compensation for taking the risk of suffering bodily injury. While an individual truly "owns" the right to bodily security (and a spouse may have a separate cause of action for injuries to a partner), both the employee and his or her spouse share the right to that employee's continued safety and productivity. The portion of the System's retirement benefit that arguably compensates for the dangerous nature of the job is as much community property as the portion that compensates for services.

116 Ariz. 272, 569 P.2d 214 (1977), we specifically declined to consider the valuation issue in circumstances similar to those in the cases at bar because the matter had been waived on appeal. We noted specifically that we neither condoned nor condemned the correctness of the valuation formula used by the trial court in *Van Loan. Id.* at 274–75, 569 P.2d at 216–17.

We base our analysis on clearly established community property principles. First, pension plans are a form of deferred compensation to employees for services rendered, and any portion of the plan earned during marriage is community property subject to equitable division at dissolution. *Johnson,* 131 Ariz. at 41, 638 P.2d at 708; *Van Loan,* 116 Ariz. at 273–74, 569 P.2d at 216–17. We recognize that retirement benefits are often one of a community's most valuable assets. Second, during marriage a husband and wife have an equal, immediate, present, and vested interest in the community assets. *Hatch v. Hatch,* 113 Ariz. 130, 131, 547 P.2d 1044, 1045 (1976). When the community property is divided at dissolution pursuant to the mandate of A.R.S. § 25–318, each spouse receives an immediate, present, and vested separate property interest in the property awarded to him or her by the trial court. It is clear that a former spouse loses any interest in and control over that separate property. Finally, it is established law that while the fruits of labor expended during marriage are community property, *Shaw v. Greer,* 67 Ariz. 223, 225, 194 P.2d 430, 431 (1948), earnings after dissolution are separate property.

The formulas proposed by both the trial court and the court of appeals contravene these established community property principles. Both formulas award the non-employee spouse a portion of the retirement benefits, but provide that they shall not be paid until the employee spouse retires and begins to collect retirement benefits. Once a portion of the community retirement plan is awarded to the non-employee spouse at dissolution, it becomes that individual's separate property. In ruling that the non-em-

ployee spouse's interest in the retirement benefits cannot be satisfied until the employee spouse decides to retire, the courts are awarding the latter unilateral control over the property of the former. The California Supreme Court has stated that it is a "settled principle that one spouse cannot, by invoking a condition wholly within his control, defeat the community interest of the other spouse." *In re Marriage of Stenquist,* 21 Cal.3d 779, 786, 582 P.2d 96, 100, 148 Cal.Rptr. 9, 13 (1978). This principle has even stronger applicability when the property wholly within the control of another is the separate property of an ex-spouse. *See In re Marriage of Gillmore,* 29 Cal.3d 418, 423, 629 P.2d 1, 4, 174 Cal. Rptr. 493, 496 (1981). The employee spouse's decision not to retire deprives the non-employee spouse of the immediate enjoyment of separate property.

The courts' rulings delaying the receipt of benefits until the employee spouse retires also forces the non-employee spouse to share the risk that such benefits will be greater in the future. The statutory scheme allows an employee to work up to 10 years beyond the normal retirement date. A.R.S. § 38–845(A)(2). Retirement benefits under the Public Safety Personnel System are based upon a percentage of the employee's highest wages. *Id.* The risk involved to the non-employee spouse is that the employee spouse's retirement benefits cease at death. By statute, death benefits are restricted to current spouses and children. A.R.S. § 38–846. Thus, if the employee spouse dies before retirement, the non-employee spouse would lose his or her benefits under the plan.

The court of appeals attempted to ameliorate the risk of loss faced by the non-employee spouse by devising a formula which would permit that spouse to share in the future increases in the pension benefits. This compromise is improper for several reasons. First, it improperly allows the non-employee spouse to share in the post-dissolution separate property earnings of the employee spouse. Since the non-employee spouse cannot legally share in the

prospective benefits of the delayed retirement, he or she should not be forced to share in the potential risks of such a venture. The non-employee spouse should not be made to be an involuntary investor in an ex-spouse's pension plan. Second, under the statutory scheme governing the pension plan, the ex-spouses do not equally share in the risk. If the employee dies, the non-employee spouse is totally divested of benefits under the plan. The employee's interests are not totally divested. A percentage of the retirement benefits are paid to a surviving married spouse or children. A.R.S. § 38–846. Likewise, A.R.S. § 38–846(I) provides that a lump sum payment is to be made to a beneficiary designated by the employee as refund of accumulated contributions upon the death of the last statutory beneficiary. Thus, the employee spouse's benefits will be passed on to survivors.[5] Finally, forcing a non-employee spouse to share the risk of losing the benefits completely, with the possibility of receiving greater benefits, disregards the value of current funds to the non-employee spouse. The timing of the receipt of, and the control of, assets are important aspects to the value of those assets. This is especially true for the age group eligible for retirement benefits. For an older person, the current value of the benefits may be much more important than a greater future value.

■ It is argued that spousal maintenance can help to make up for the fact that the non-employee spouse is not receiving a share of the retirement benefits. This argument loses sight of the fact that property division and spousal maintenance are two separate and distinct considerations at dissolution. *In re Marriage of Foster*, 125 Ariz. 208, 608 P.2d 785 (App.1980). In-

creased spousal maintenance cannot justify depriving a spouse of his or her property right. *See Buttram v. Buttram*, 122 Ariz. 581, 582, 596 P.2d 719, 720 (1979).

The second problem with the disposition of the retirement assets by the trial court and the court of appeals is that both formulas award a share of the employee spouse's earnings after dissolution to the non-employee spouse. The trial court's formula figures the community property interest of the retirement benefit payment by multiplying the amount of the payment by a factor of which the number of months enrolled in the pension plan while married is the numerator and the total number of months worked is the denominator. One-half of that amount is then awarded to the non-employee spouse at the time that it is awarded to the employee spouse. If the amount of the monthly benefit at retirement is greater than the monthly benefit would have been had the employee spouse retired at the normal retirement date, any increases will be due to separate labors of the employee spouse. *See Van Loan*, 116 Ariz. at 275–76, 569 P.2d at 217–18 (Holohan, J., dissenting) (arguing that even though the validity of the formula applied by the trial court in that case had not been challenged on appeal, the court should nonetheless reverse the award since it was fundamental error to award non-employee spouse a percentage of the separate labors of the employee spouse).[6] The court of appeals' opinion in *Haynes* states that *Van Loan* specifically approved of the sharing of the increased benefits with the non-employee spouse. *Haynes*, 148 Ariz. at 199, 713 P.2d at 1257. This is clearly incorrect.

■ The formula propounded by the court of appeals in *Koelsch* and applied in

---

**5.** It has been suggested that an ex-spouse should share in the benefits payable to a current spouse or a child upon the death of the employee according to the former spouse's property interest in the retirement benefits. Sterling, *Division of Pensions: Reserved Jurisdiction Approach Preferred*, 11 Community Prop.J. 17, 29 (Winter 1984). Because this question is not before us, and has not been briefed by the parties, we offer no opinion. Likewise, we offer no opinion on an ex-spouse's right to the lump sum payoff of

accumulated benefits provided by A.R.S. § 38–846(I).

**6.** We express no opinion on the validity of this formula in circumstances where the pension benefits are not matured and payable upon retirement except to note that the factors involved in such a case are different than those espoused in this opinion.

*Haynes* exacerbates the problem. The court of appeals' formula changes the denominator of the fraction to the number of months necessary for the pension plan to mature. For purposes of the Public Safety Personnel System, that number would always be 240. The effect of the court of appeals' formula is to fix the non-employee spouse's percentage interest in the retirement benefits at the time the benefits would first be payable but for the employee spouse's decision not to retire. The express purpose of the court of appeals in granting the non-employee spouse an even greater share of the separate earnings of the employee spouse was that "in consideration of the one spouse foregoing the present enjoyment of the benefits, he or she will share in any increase in benefits that continued employment will produce, including increase in pension benefits and salary." *Koelsch*, 148 Ariz. at 191, 713 P.2d at 1249. The court of appeals' formula seems to adopt the proposition that two wrongs make a right. In both denying the non-employee spouse immediate right to separate property benefits and instead awarding that spouse a share of the employee spouse's separate property, the court of appeals has violated two fundamental principles of community property law. We disapprove.[7]

■ There are several methods by which the parties or the trial court can satisfy the non-employee spouse's interest in a matured retirement plan. Anytime a benefit is matured and payable, however, the method of division must be based on a determination of present value. In *Johnson*, we discussed two major approaches to valuing pension benefits that had not yet matured.[8] We expressed a preference for lump sum distribution in which the present value of the pension plan is determined actuarially, the non-employee spouse's interest is either offset with other community property or bought out by the employee spouse, and the employee spouse takes a free and clear interest in the pension plan. *Johnson*, 131 Ariz. at 41, 638 P.2d at 708. The other method, the "reserved jurisdiction method," provides that "the court determines the formula for division at the time of the decree but delays the actual division until payments are received, retaining jurisdiction to award the appropriate percentage of each pension payment if, as, and when, it is paid out." *Id.* We expressed preference for the lump sum method, but approved of the reserved jurisdiction method. The reserved jurisdiction method is appropriate when the benefit is not matured and not immediately payable. In that case, neither spouse has an immediate right to the pension benefits. If there are insufficient other community assets to offset the pension plan value, and if the employee spouse is unwilling to buy out the interest of the non-employee spouse, there is no alternative in the non-matured pension cases but to reserve jurisdiction to award the pension when it does mature. The opinion in *Johnson*, and several other Arizona cases dealing with unmatured pension benefits, assume that the pension benefits will be taken when matured and available. As such, they never reach the question addressed in this opinion. The reserved jurisdiction of *Johnson* has come due in this case.

■ Although the reserved jurisdiction aspect of *Johnson* is inapplicable here, the lump sum and periodic payment aspects are fully applicable. The lump sum distribution method is preferable in this situation as well. It provides a clean break between the parties, it provides an unencumbered pension plan to the employee, it relieves the court of any further supervision, and it relieves the retirement agencies of the duty to pay benefits to anyone but the employee.

---

7. In *Gillmore*, the California Supreme Court gave the non-employee spouse the option of foregoing the immediate receipt of her share of the pension benefits at the time of maturity in order to share in the potential increased benefits of the plan. *Gillmore*, 29 Cal.3d at 428, 629 P.2d at 7, 174 Cal.Rptr. at 499. We disagree with that aspect of the *Gillmore* holding.

8. In *Johnson*, pension plan benefits would not be available to the parties until 22 years after dissolution. *Johnson*, 131 Ariz. at 40, 638 P.2d at 707.

It is argued that the drawbacks of the lump sum approach are so serious as to overshadow its many benefits. *See generally*, Sterling, *supra*. The basis of the criticism of the lump sum method is that the extensive actuarial calculations that are necessary to produce a present value lump sum are expensive, speculative, and always inaccurate. *Id.* Many of the complained of speculative factors that would be present with an unmatured pension are not at issue when the pension is matured. Since the pension plan is matured and payable if the employee spouse decides to retire, the problems of pre-retirement mortality, age at retirement, and salary at retirement are non-existent. The lump sum valuation need only consider the present value of future benefits, the expected life span of the employee spouse, and future increases in the value of the pension plan attributable to the "inherent qualities of the asset itself," *Everson v. Everson*, 24 Ariz.App. 239, 243, 537 P.2d 624, 628 (1975).[9] The community property portion of the retirement benefit would be calculated by multiplying the lump sum present value of the pension plan at the date of maturity by a fraction in which the total months married while enrolled in the pension plan is the numerator and the total time in the pension plan up to the date of dissolution is the denominator. The non-employee spouse would then be awarded one-half of that amount. This formula assures that only the amount attributable to community effort or to the intrinsic quality of the community asset is divided as community property. By fixing the percentage of the community property interest as of the date of dissolution and the amount of the benefit as of the date of maturity, we avoid the problem of dividing the fruits of separate labor that is inherent in the formulas of both the trial court and the court of appeals.

Once the non-employee spouse's lump sum interest in the pension plan is determined, there are several ways by which that interest can be satisfied. First, if there is sufficient other community property the non-employee spouse can be awarded an amount equal to the value of the interest in the pension plan. The trial court also has the power to order that the non-employee spouse's interest be paid in full at a specified time, or payable in installments which may or may not correspond with the amount the non-employee spouse would receive if the employee spouse were to retire. In *Spector v. Spector*, 94 Ariz. 175, 382 P.2d 659 (1963), we approved a community property disposition in which the husband was awarded title to the community property business and was ordered to pay the wife her interest in five annual installments. We stated that "[t]he trial court was also acting within its discretion in leaving title to the property in the husband and awarding the wife a cash amount, considering the delicate business problems involved in maintaining the value of the property and the prospective losses which would result from its liquidation." *Spector*, 94 Ariz. at 181, 382 P.2d at 664. *See also McCune v. McCune*, 120 Ariz. 402, 403, 586 P.2d 651, 652 (App.1978). The court should properly provide for payment of interest on the postponed payments. *See Spector*, 94 Ariz. at 181, 382 P.2d at 665; *McCune*, 120 Ariz. at 403, 586 P.2d at 652. The trial court is authorized to impose a lien on any or all of the employee spouse's separate property. *See* A.R.S. § 25–318(C) ("the court may impress a lien upon the separate property of either party or the marital property awarded to either party in order to secure the payment of any

---

**9.** The question in *Everson* was whether the increase in value of a separately owned corporation was community property or separate property. If the increase was due to the efforts of the owner while married, the increase would be community property; if it was due to increases from the inherent qualities of the business, it would be separate property. Similarly, increases in the value of the pension benefits attributable to the employee spouse's efforts after dissolution would be separate property, while any benefits due to the inherent quality of the pension plan would be community property. An "inherent quality" increase would be one that is granted to all pension plans regardless of whether the employee was still working or had retired. A statutorily authorized cost of living increase would be an example.

interest or equity the other party has in or to such property. . . .").

If the lump sum method would be impossible or inequitable, the court can order that the non-employee spouse be paid a monthly amount equal to his or her share of the benefit which would be received if the employee spouse were to retire. The community interest in the monthly payments would be calculated according to the same formula used for a lump sum payment. The monthly amount which would be available if the employee spouse were to retire is multiplied by a fraction in which the total months married while enrolled in the pension plan is the numerator and the total time in the pension plan up to the date of dissolution is the denominator. Each spouse would receive one-half of the amount.

Again, there are several payment alternatives, the choice of which depends on the equities of the individual case. If the employee spouse decides to retire, both shares can be paid directly to the beneficiaries by the retirement agency. If the employee spouse chooses not to retire, he or she would be liable to reimburse the non-employee spouse for the property interest in the monthly pension benefit that is precluded by the employee spouse's decision not to retire. As discussed above, the employee spouse cannot unilaterally deprive the non-employee spouse of his or her property. The California Supreme Court in *Gillmore* stated that "if [the employee spouse] opts for an alternative that deprives [the non-employee spouse] of her full share of the retirement benefits, he must compensate her for the interest she loses as a result of his decision." 29 Cal.3d at 426, 629 P.2d at 6, 174 Cal.Rptr. at 498. We wish to leave open to the trial court's discretion the option, under very limited circumstances, of deferring all or part of the monthly payment owed to the non-employee spouse. The accrued deferred payments would be repaid with interest and would be secured by a lien on the employee spouse's separate property, or the court could require the employee spouse to provide a policy of insurance naming the non-employee spouse

as irrevocable beneficiary in an amount sufficient to pay the amount of the deferred payments with interest. *See Farsace v. Farsace*, 97 App.Div.2d 951, 468 N.Y.S.2d 751 (1983). The non-employee spouse would not share any increases in the value of the pension plan due to the efforts of the employee spouse after dissolution. There would, however, be shared increases due to the "intrinsic quality" of the retirement plan.

We urge the parties and the trial court to be as creative and flexible as possible, within the guidelines provided in this opinion, to both guarantee that the non-employee spouse will receive his or her share of the pension benefits and to avoid the undesirable consequence of encouraging employees to retire against their wishes.

■ The retirement agencies argue in *Haynes* that the employee spouse's interest is indivisible as far as the agencies are concerned. They contend, therefore, that any payment to the non-employee spouse must come directly from the employee spouse, and not from the system. We agree that the retirement agencies cannot be forced to pay the non-employee spouse his or her share before the employee spouse retires. This would be contrary to the clear language of the statute which specifies eligibility for retirement benefits. *See* A.R.S. § 38–844. Thus, when the employee spouse continues to work, he or she must reimburse the non-employee spouse. Once the employee spouse retires, however, we see no reason why the retirement agencies should not send checks to both the employee and the non-employee spouses. There is no language in the statute expressly precluding such an arrangement. Indeed, A.R.S. § 38–850(C) uses the language "[b]enefits . . . received by the person entitled to the benefit. . . ." This language indicates that the Legislature envisioned benefit payments being made to persons other than members of the retirement system. Otherwise, the word "member" rather than "person" would have been used. Other jurisdictions which have con-

sidered this question have concluded that the retirement agency should be required to make payments directly to the non-employee spouse. *See In re Marriage of Johnston,* 85 Cal.App.3d 900, 908, 149 Cal. Rptr. 798, 806 (1978); *Collida v. Collida,* 546 S.W.2d 708, 710 (Ct.Civ.App.Tex.1977).

The retirement agencies further argue that requiring them to make payments to non-employee spouses would so severely raise administrative costs that it would threaten the system and be a detriment to the interests of the beneficiaries of the agencies. As noted by the court of appeals, there is nothing in the record to support the argument that a great burden to the system would result. *See also Johnston,* 85 Cal.App.3d at 908, 149 Cal.Rptr. at 806. We cannot envision why such a procedure would be a major burden on the retirement agencies. The responsibility for determining the amount to be paid to each spouse would be on the parties and the court. Any changes in amount to be paid to the non-employee due to intrinsic increases would be instigated by court order. Likewise, it would be, the responsibility of the parties to keep the agencies informed of current addresses. In response to the suggestion that the non-employee spouse should be limited to seeking payment from the employee spouse, with a contempt sanction for failure to pay, we note that the non-employee spouse, as an owner of the pension benefit, should face no greater burden to collect than does the employee spouse.

### III. TAX CONSEQUENCES OF VOLUNTARY DEFERRED COMPENSATION PLAN

■ In *Haynes,* David Haynes had contributed $9,888.00 into a voluntary deferred compensation plan during the course of the marriage. The trial court awarded Ann Haynes one-half of that amount at dissolu-

tion. David argues that the award improperly failed to consider the effect of income taxes on the value of his interest in the deferred compensation plan. The court of appeals correctly noted that this issue is controlled by our decision in *Johnson,* 131 Ariz. at 43, 638 P.2d at 710. In *Johnson,* we held that trial courts could "decline to consider the speculative future effect of taxes and inflation." *Id.* In his petition for review, David Haynes argues that *Johnson* should not apply to this case since the tax consequences are not distant and speculative or that *Johnson* should be overruled. We find that *Johnson* is perfectly congruent with David Haynes' view. In *Johnson,* we stated that "if the future maturity date were close to the trial date, the tax consequences could be immediately and specifically determined. In such a case, the court should consider the effects of taxation on the valuation." *Id.* at 43 n. 11, 638 P.2d at 710 n. 11.

We vacate the opinion of the Court of Appeals in *Koelsch v. Koelsch,* 148 Ariz. 187, 713 P.2d 1245 (1984), and affirm in part and vacate in part the opinion of the Court of Appeals in *Haynes v. Haynes,* 148 Ariz. 191, 713 P.2d 1249 (1984). We hereby remand both cases to the trial court for further consideration consistent with the guidelines expressed in this opinion.

HAYS, CAMERON and FELDMAN, JJ., concur.

GORDON, V.C.J., did not participate in the determination of this matter.