IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

SHANEN CASWELL, *Petitioner/Appellee,*

*v.*

SHAWN CASWELL, *Respondent/Appellant.*

No. 1 CA-CV 22-0430 FC
FILED 6-20-2023

Appeal from the Superior Court in Yavapai County
No.  P1300DO201800728
The Honorable Cele Hancock, Judge

**VACATED**

COUNSEL

Keist, Thurston O'Brien, P.C., Peoria
By Joel N. Thurston
*Counsel for Petitioner/Appellee*

Popp Law Firm P.L.C., Tempe
By James S. Osborn Popp
*Counsel for Respondent/Appellant*

**OPINION**

Judge Daniel J. Kiley delivered the opinion of the Court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse Jr. joined. Judge Morse also delivered a separate special concurrence in which Presiding Judge Cruz joined.

**K I L E Y**, Judge:

¶1        After dissolving the marriage of Shanen Caswell ("Wife") and Shawn Caswell ("Husband") by consent decree (the "Consent Decree"), the superior court entered a stipulated domestic relations order (the "Stipulated DRO") providing for the distribution of the community interest in Husband's pension benefits upon his retirement. More than 18 months later, and over Husband's objection, the court entered an amended Domestic Relations Order (the "Amended DRO") requiring Husband to make monthly payments to Wife until he retires pursuant to *Koelsch v. Koelsch*, 148 Ariz. 176 (1986). Husband appeals from the Amended DRO.

¶2        When it entered the Stipulated DRO, the court expressly retained jurisdiction to enforce, but not to modify, its provisions. By requiring Husband to make *Koelsch* payments, however, the Amended DRO modified the Stipulated DRO by imposing a new obligation on one of the parties. Because Wife neither requested nor established grounds for modification under Arizona Rule of Family Law Procedure ("Rule") 85, the court was without jurisdiction to enter the Amended DRO. Accordingly, we vacate the Amended DRO.

**FACTS AND PROCEDURAL HISTORY**

¶3        Throughout the parties' 14-year marriage, Husband, a law enforcement officer, was a member of the Arizona Public Safety Personnel Retirement System ("PSPRS").

¶4        As relevant here, the Consent Decree awarded each party half "of the community interest in [Husband's] PSPRS defined benefit plan" accrued during the marriage through the date the marital community terminated in August 2017. The Consent Decree provided that

> [Husband's] PSPRS shall be divided through a Domestic
> Relations Order in accordance with the terms contained

> [herein]. The cost of preparing the Domestic Relations Order shall be equally shared by the parties.

The Consent Decree was entered as a final judgment under Rule 78, and no party appealed.

¶5　　　　Later, the superior court entered the Stipulated DRO, which states that Wife "is awarded as her sole and separate property a pro-rata share of [Husband's] pension payable directly by [PSPRS] *at the same time and in the same manner payments are made to* [*Husband*] pursuant to [PSPRS]." (Emphasis added.) Paragraph 3(d) of the Stipulated DRO states that "[n]othing in this Order shall be construed to place any limits on [Wife's] legal rights to make a claim for direct payments under [*Koelsch*]." Paragraph 11 of the Stipulated DRO provides that

> [t]he Court retains jurisdiction to amend this Order *but only* for the purpose of establishing or maintaining its acceptance to the relevant System or Plan, and to supervise the payment of retirement benefits as provided in the Order to [Wife].

(Emphasis added.) No party appealed from the Stipulated DRO, which was an appealable order under A.R.S. § 12-2101(A)(2). *See Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 12 (App. 2007) (recognizing right to appeal from domestic relations order as a special order entered after final judgment).

¶6　　　　Almost six months after entry of the Stipulated DRO, Wife filed a petition seeking to "enforce the prior judgment made in this matter." Asserting that Husband's "willful[]" decision not to retire was "preventing [her] from obtaining her benefits under the pension," Wife asked the court to order Husband to "begin to pay [Wife] her expected benefit, now."

¶7　　　　At a hearing in July 2021, the superior court rejected Husband's contention that it lacked jurisdiction to order him to make pre-retirement *Koelsch* payments to Wife as compensation for the delay in her receipt of pension benefits. The court found that Wife did not "waive her right to a *Koelsch* claim" in the Consent Decree, and that the Stipulated DRO "specifically sets out [Wife's] rights to make a claim under *Koelsch*." After further proceedings, and over Husband's objection, the court entered the Amended DRO in May 2022 requiring Husband to pay Wife "a gross monthly *Koelsch* payment of $1,144.22" until she "starts receiving direct payments from the PSPRS" upon Husband's retirement.

**¶8**          Husband timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(2).

## DISCUSSION

**¶9**          The interpretation of a dissolution decree or court order presents a question of law that is reviewed *de novo*. *Chopin v. Chopin*, 224 Ariz. 425, 427, ¶ 6 (App. 2010).

**¶10**          The Arizona Supreme Court recognized in *Koelsch* that the portion of an employee pension that was earned during the employee's marriage is community property subject to equitable division upon dissolution of the employee's marriage. *Koelsch*, 148 Ariz. at 181. Noting that, after dissolution, the non-employee spouse will not begin to receive his or her share of the pension benefits until the employee spouse retires, the *Koelsch* court found that an employee spouse's decision to delay retirement after dissolution "deprives the non-employee spouse of the immediate enjoyment" of his or her share of the pension benefits. *Id.* To prevent a pension-eligible employee from "unilaterally depriv[ing] the non-employee spouse of his or her property," the *Koelsch* court held that the superior court has authority, at dissolution, to order a pension-eligible employee who delays retirement to pay the non-employee spouse "a monthly amount equal to his or her share of the benefit which would be received if the employee spouse were to retire." *Id.* at 185.

**¶11**          In entering the Amended DRO here, the superior court relied on *Koelsch*. *Koelsch* is inapposite, however, because the claim raised in *Koelsch* was asserted on direct appeal from a dissolution decree entered after a contested hearing. *Id.* at 178-79. As this Court later recognized, *Koelsch* "does not authorize a post-judgment alteration to the spouses' agreed-upon distribution" of retirement benefits at dissolution. *Quijada v. Quijada*, 246 Ariz. 217, 219, ¶ 1 (App. 2019).

**¶12**          In *Quijada*, the consent decree dissolving the marriage of Michael and Julie Quijada directed that the community's interest in Michael's PSPRS pension would be divided pursuant to a stipulated DRO. *Id.* at ¶ 3. The DRO, in turn, provided that Julie would receive her share of the community's interest in the pension "payable directly by [PSPRS] at the same time and in the same manner payments are made to [Michael]." *Id.* (cleaned up). The DRO permitted amendments "only for the purpose of establishing or maintaining its acceptance to [PSPRS] and to supervise the payment of retirement benefits as provided in the Order." *Id.* When Michael continued to work past his retirement eligibility date, Julie petitioned the

superior court to require him to compensate her for the delay in her receipt of pension benefits by making direct payments to her pursuant to *Koelsch*. *Id.* at ¶ 4. The court denied her request. *Id.*

¶13 On appeal, we affirmed, holding that a post-dissolution order requiring Michael to make *Koelsch* payments to Julie would effect "a *de facto* modification" of a final judgment in violation of Arizona law. *Id.* at 220, ¶ 5. "[A]t the time of dissolution," we noted, Julie "could have insisted upon a different valuation or distribution method," including "one whereby she received a *Koelsch*-type offset payment in the event [Michael] elected not to retire when first eligible." *Id.* at 221, ¶ 10. Instead, Julie stipulated to a consent decree and a DRO providing that "she would receive her portion of the retirement benefits upon their distribution to" Michael. *Id.* Accordingly, we concluded, Julie "waived any argument" that she was entitled to later seek *Koelsch* payments that were not provided for in the stipulated decree and DRO. *Id.*

¶14 As in *Quijada*, the parties here stipulated to a dissolution decree providing that the community's interest in retirement benefits would be distributed pursuant to a DRO. The court subsequently entered the Stipulated DRO awarding Wife "a pro-rata share of [Husband's] pension payable directly by [PSPRS] at the same time and in the same manner payments are made to [Husband]." When entering the Stipulated DRO, the superior court retained jurisdiction "only for the purpose of establishing or maintaining [the DRO's] acceptance to the relevant System or Plan, and to supervise the payment of retirement benefits as provided in the Order to [Wife]." Accordingly, neither the Consent Decree nor the Stipulated DRO was subject to modification absent a showing of circumstances justifying relief pursuant to Rule 85. *See* A.R.S. § 25-327(A) ("The provisions [of a dissolution decree] as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state."); *Breitbart-Napp v. Napp*, 216 Ariz. 74, 80, ¶ 16 (App. 2007) ("The reopening of a [dissolution decree] is governed by [predecessor to Rule 85].").

¶15 Rule 85 authorizes relief from a final decree or judgment on one of several specified grounds, including "mistake," "surprise," or "other reason justifying relief." The moving party bears the burden of establishing grounds for relief, *see Duckstein v. Wolf*, 230 Ariz. 227, 230, ¶ 5 (App. 2012), and the superior court has "no authority to grant relief without some evidence to support the claim on which the application for relief depended," *Breitbart-Napp*, 216 Ariz. at 82, ¶ 30 n.5 (citation omitted).

¶16        Nothing in the record indicates that the superior court found grounds for relief under Rule 85. Indeed, the court expressly found that no request for Rule 85 relief had been made.[1] Because relief under Rule 85 was neither sought nor granted, the court lacked authority to modify the parties' stipulated distribution of retirement benefits by entering the Amended DRO.

¶17        In support of her position, Wife relies on *DeLintt v. DeLintt*, 248 Ariz. 451 (App. 2020). In *DeLintt*, we vacated the superior court's denial of the wife's post-decree request for an order requiring the husband, a federal employee covered by a pension plan, to make *Koelsch* payments to her until he retired. *Id.* at 452-53, ¶ 1. In so holding, we determined, first, that the dissolution decree did not foreclose the wife's *Koelsch* claim because the decree was "silent as to the timing and terms of how [she] was to receive her share of [the husband's] retirement benefits." *Id.* at 454, ¶ 9. Further, we noted, the decree expressly reserved jurisdiction to resolve "any disputes" over the division of the parties' retirement benefits. *Id.* at 453-54, ¶¶ 3, 10. Under the circumstances, we concluded, the superior court erred in concluding that the wife waived her right to seek *Koelsch* payments after entry of the decree. *Id.* at 454, ¶ 10.

¶18        Unlike the decree in *DeLintt*, which was "silent" on the "timing and terms" of the wife's receipt of her share of pension benefits, the Stipulated DRO here expressly awarded Wife "a pro-rata share" of the pension "directly" from PSPRS "at the same time and in the same manner payments are made to" Husband. Further, while the decree in *DeLintt* reserved jurisdiction "to resolve *any* disputes regarding the division" of the parties' retirement benefits, *id.* at 453, ¶ 3 (emphasis added), the Stipulated DRO here provides that the court retained jurisdiction only for the purpose of implementing and enforcing the terms of the Stipulated DRO. Because the relevant circumstances presented here are unlike those in *DeLintt*, that case provides no support to Wife's position.

¶19        As noted above, Paragraph 3(d) of the Stipulated DRO states in part that "[n]othing in this Order shall be construed to place any limits on [Wife's] legal rights to make a [*Koelsch*] claim." In rejecting Husband's

---

[1] The parties disputed whether, if the court ordered Husband to make *Koelsch* payments, he would be entitled to offset attributed Social Security benefits against the amount of those payments. In holding that Husband did not preserve his claim for such an offset, the superior court found that "[t]he issue of a social security offset was not raised during the dissolution, nor was there a Rule 85 motion to alter or amend timely filed in this case."

challenge to its jurisdiction to modify the Stipulated DRO, the superior court implicitly relied on Paragraph 3(d) when it stated that the Stipulated DRO "specifically sets out [Wife's] rights to make a claim under *Koelsch*." But the Stipulated DRO did not reserve the court's jurisdiction to modify the parties' stipulated allocation of retirement benefits.

¶20 A court's reservation of jurisdiction upon entry of a stipulated judgment or consent decree must be set forth in clear and unequivocal terms. *See Major v. Coleman*, 251 Ariz. 345, 349, ¶ 15 (App. 2021) ("[R]etaining jurisdiction to enforce a settlement agreement upon stipulation of the parties can be accomplished through an express provision retaining jurisdiction over the settlement agreement[.]"). This is particularly true in the context of property distributions in dissolution decrees in light of the "compelling policy interest favoring the finality of property settlements." *Reed v. Reed*, 124 Ariz. 384, 385 (App. 1979); *see also De Gryse v. De Gryse*, 135 Ariz. 335, 336, 338 (1983) (affirming denial of husband's request to modify decree that awarded half of his military pension to wife and citing "[t]he well-established rule . . . that property settlements are not subject to modification").

¶21 Paragraph 3(d)'s statement that "[n]othing in this Order shall be construed to place any limits on [Wife's] legal rights to make a [*Koelsch*] claim" does not expressly retain the court's jurisdiction to modify the Stipulated DRO. Instead, Paragraph 3(d) merely provides that, by consenting to the Stipulated DRO, Wife would not be deemed to have waived her right to later seek modification of the distribution of retirement benefits by post-judgment motion. Paragraph 3(d), in other words, operates to spare Wife the fate of the ex-wife in *Quijada*, who was held to have "waived" her claim for *Koelsch* payments when she stipulated to a decree and DRO that did not provide for them. *Quijada*, 246 Ariz. at 221, ¶ 10.

¶22 Paragraph 11, the retention-of-jurisdiction provision of the Stipulated DRO, states that "[t]he Court retains jurisdiction to amend this Order *but only* for the purpose of establishing or maintaining its acceptance to the relevant System or Plan, and to supervise the payment of retirement benefits as provided in the Order to [Wife]." (Emphasis added.) Because Paragraph 11, by its terms, reserves jurisdiction only to implement and enforce the Stipulated DRO, it does not allow modification of the Stipulated DRO.[2] *See Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 11 (App. 2007) ("The meaning of

---

[2] In *Miner v. Miner*, No. 1 CA-CV 21-0155 FC, 2021 WL 4901603, at *1, ¶ 1 (Ariz. App. Oct. 21, 2021) (mem. decision), this Court affirmed the superior

a decree is to be determined from the language used.") (citation omitted). The superior court therefore lacked jurisdiction to modify the Stipulated DRO unless one of the parties sought, and established grounds for, relief under Rule 85(b). *See Solmo v. Friedman*, 909 So. 2d 560, 565 (Fla. Dist. Ct. App. 2005) (holding that dissolution decree's provision reserving jurisdiction "for the purpose of enforcing" its terms and "entering such further orders" as may be "just and proper" was insufficient to reserve jurisdiction "to modify property rights after an adjudication of those rights"); *Schrader v. Schrader*, 669 N.E.2d 878, 878-80 (Ohio Ct. App. 1995) (holding that DRO's provision retaining "limited jurisdiction to amend this order only . . . to create, conform, and maintain" the DRO "cannot be read as an express reservation of jurisdiction to modify the terms of the [DRO]").

**¶23**     Under the guise of a petition to "enforce" the Stipulated DRO, Wife obtained a *de facto* modification of the Stipulated DRO with no showing of grounds for such a modification under Rule 85(b). Because, when it entered the Stipulated DRO, the superior court retained jurisdiction only to enforce it, the court exceeded its jurisdiction when it entered the Amended DRO modifying the parties' agreed-upon distribution of retirement benefits. *See Danielson v. Evans*, 201 Ariz. 401, 412, ¶ 38 (App. 2001) ("Any action taken by a court which does not have jurisdiction is void and a nullity.") (cleaned up). We therefore vacate the Amended DRO and need not address the alternative arguments Husband raises on appeal.

## CONCLUSION

**¶24**     For the foregoing reasons, we vacate the Amended DRO.

**¶25**     Husband requests an award of attorney fees and costs on appeal pursuant to A.R.S. § 25-324 and Arizona Rule of Civil Appellate Procedure ("ARCAP") 21. In our discretion, we deny his request for fees. However, as the prevailing party, Husband is awarded his costs incurred on appeal upon compliance with ARCAP 21(b).

---

court's order modifying a DRO to award *Koelsch* payments to the former wife after the former husband decided to continue working as a police officer past his retirement eligibility. In so holding, we noted that the DRO expressly "reserved the court's authority to amend the Order to reflect the amount of the *Koelsch* payment." *Id.* at *2, ¶ 11 (cleaned up). Because the Stipulated DRO here does not reserve the superior court's jurisdiction to modify its provisions, *Miner* is inapposite.

**M O R S E**, Judge, joined by Presiding Judge Cruz, specially concurring:

¶26        The majority faithfully applies our existing precedents to the facts of this case. We write separately to note our concern with these precedents.

¶27        Because "retirement benefits are often one of a community's most valuable assets," courts can order payments from an employee spouse to compensate a non-employee spouse for delayed payment of community retirement benefits. *Koelsch*, 148 Ariz. at 181. Our supreme court recognized at least four options for addressing this situation, including (1) an award of other community property "equal to the value of the [non-employee spouse's] interest in the" retirement benefit; (2) "order that the non-employee spouse's interest be paid in full [or installments] at a specified time"; (3) monthly-payments for the share of the "monthly pension benefit that is precluded by the employee spouse's decision not to retire"; and (4) "deferring all or part of the monthly payment" to be repaid with interest and "secured by a lien on the employee spouse's separate property" or an insurance policy. *Id*. at 184-85.

¶28        *Koelsch* involved a claim raised on direct appeal from a dissolution decree. Our recent cases, however, involve post-decree litigation from dissolution decrees that are silent about whether to order *Koelsch* payments, the amount of any such payments, and the appropriate method for making payments. *E.g.*, *DeLintt*, 248 Ariz. at 453, ¶ 4; *Quijada*, 246 Ariz. at 219, ¶ 4; *Miner*, 2021 WL 4901603, at *1, ¶ 4. We have tacitly endorsed an approach in which the trial court does not address *Koelsch* in the decree except to reserve jurisdiction to address the issue in the future. *E.g.*, *DeLintt*, 248 Ariz. at 454, ¶ 10. Because determining both whether and how to order *Koelsch* payments is part of dividing community property, *see Koelsch*, 148 Ariz. at 181, a decree that only reserves jurisdiction to decide the issue later may not be a true final appealable judgment, *see* Ariz. R. Fam. Law P. 78(c) (stating that an appealable judgment must resolve all claims and issues), nor an all-inclusive decree, *see* A.R.S. § 25-312(E).

¶29        "A.R.S. § 25-318 is clear in its mandate that community property must be divided on dissolution of the marriage." *Dole v. Blair*, 248 Ariz. 629, 633, ¶ 12 (App. 2020). And "A.R.S. § 25-312 clearly mandates that all issues relative to the marital status and the termination thereof be resolved prior to entry of a decree of dissolution. Piecemeal litigation is not to be encouraged; to the contrary, amicable settlement of custody, maintenance and property disputes between spouses is the desirable

goal." *Porter v. Estate of Pigg*, 175 Ariz. 194, 195-96 (App. 1993) (quoting *Brighton v. Superior Court*, 22 Ariz. App. 291, 292 (1974)), *approved by* 175 Ariz. 303, 304 (1993). Thus, the family court errs when it "bifurcat[es] its rulings," and dissolves the marriage but retains jurisdiction to enter further orders about property. *Larchick v. Pollock*, 252 Ariz. 364, 367, ¶ 13 (App. 2021); *see* A.R.S. § 25-312(E) ("To the extent it has jurisdiction to do so, the court *shall* make provisions for . . . the disposition of property." (emphasis added)); A.R.S. § 25-318(A) ("[T]he court *shall* also divide the community, joint tenancy and other property held in common equitably . . . ." (emphasis added)).

**¶30**         Admittedly, our supreme court has approved the reserved-jurisdiction approach for immature pension benefits that are impossible to calculate and award at the time of divorce. *Koelsch*, 148 Ariz. at 183; *Boncoskey*, 216 Ariz. at 451-52, ¶ 16. But, when possible, *Koelsch* contemplates addressing the issue while dividing other community property in the dissolution. *See Koelsch*, 148 Ariz. at 184-85 (endorsing use of other community property to offset retirement benefits). This is especially true when, as in this case, the court's judgment is based on a consent decree and stipulated DRO, i.e., a settlement agreement, and a subsequent motion to enforce. If a dissolution decree is silent about whether *Koelsch* payments should be awarded, the amounts to be paid, and the method for making such payments, it is difficult to discern what settlement the court retains jurisdiction to enforce. *See Major v. Coleman*, 251 Ariz. 345, 349, ¶ 15 (App. 2021) (noting that retaining jurisdiction over a settlement agreement "encourages settlement by providing parties certainty about the terms of an agreement and a mechanism to easily enforce performance of the agreement").

**¶31** Instead of leaving such a significant issue unresolved, the parties and the family courts should attempt to resolve *Koelsch* issues in the final dissolution judgment. When a lump-sum payment or community-property offset is not possible, dissolution decrees should (1) specify the date or event (e.g., attaining eligibility for normal or early retirement) after which the employee ex-spouse will either retire or begin making *Koelsch* payments, (2) the amounts to be paid (or the manner in which the amount will be calculated), and (3) the method (i.e., current or deferred) by which the obligation will be satisfied.



AMY M. WOOD • Clerk of the Court
FILED: AA