IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

SHELLY RAE BARRON, *Petitioner/Appellee*,

*v.*

PAUL ROGER BARRON, *Respondent/Appellant*.

No. 1 CA-CV 17-0413 FC
FILED 7-31-2018

Appeal from the Superior Court in Yuma County
No. S1400DO201501132
The Honorable Stephen J. Rouff, Judge *Pro Tempore*

**AFFIRMED IN PART; REVERSED AND VACATED
AND REMANDED IN PART**

COUNSEL

Mary Katherine Boyte, PC, Yuma
By Mary K. Boyte Henderson
*Counsel for Petitioner/Appellee*

S. Alan Cook, PC, Phoenix
By S. Alan Cook, Sharon Ottenberg
*Counsel for Respondent/Appellant*

_____

**OPINION**

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Paul J. McMurdie and Judge David D. Weinzweig joined.

_____

**J O H N S E N**, Judge:

¶1   Paul Roger Barron appeals from the dissolution decree ending his marriage to Shelly Rae Barron. We reverse and remand the decree's parenting-time provisions because they are the product of impermissible presumptions about equal parenting time and gender. We also reverse portions of the decree that violate federal law governing military retirement pay and vacate and remand the attorney's fees award. In all other respects, we affirm the decree.

## FACTS AND PROCEDURAL BACKGROUND

¶2   The parties ("Husband" and "Wife," respectively) were married in 2004 and have three children, all girls, born in 2006, 2008 and 2010, respectively. The family moved to Arizona in 2013, when Husband, a helicopter pilot on active duty with the United States Marine Corps, was transferred to Yuma. Wife filed a petition for dissolution in August 2015, but the couple remained together in the marital home until shortly after the superior court issued temporary orders in March 2016.

¶3   Following a three-day trial, the superior court entered a decree of dissolution in May 2017. Relevant to this appeal, the decree continued joint legal decision-making but reduced Husband's parenting time to 130 days a year, plus specified holidays and a summer vacation, and divided the community's interest in Husband's military retirement. The court declined both parties' requests for equalization payments and awarded attorney's fees to Wife.

¶4   We have jurisdiction of Husband's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2018) and -2101(A)(1) (2018).[1]

_____

[1]  Absent material change after the relevant date, we cite the current version of applicable statutes.

## DISCUSSION

### A.    Parenting Time.

¶5          By agreement, the temporary orders had allowed Husband more parenting time than Wife because Wife was in training to become a firefighter/emergency medical technician.  The parties shared joint legal decision-making, but temporary orders granted Husband parenting time every Thursday through Sunday until Wife finished her training and "bec[ame] employed."  Wife completed her training within a few months but did not take a full-time job and did not petition the court for weekend parenting time.  The dissolution decree, entered 14 months after issuance of temporary orders, reduced Husband's parenting time to one overnight a week plus every other weekend from Friday afternoon through Monday morning.

¶6          On appeal, Husband argues the superior court abused its discretion in failing to order equal parenting time.  We review a parenting-time order for an abuse of discretion.  *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013).  An abuse of discretion occurs when the court commits legal error, *Arpaio v. Figueroa*, 229 Ariz. 444, 447, ¶ 7 (App. 2012), or "when the record, viewed in the light most favorable to upholding the trial court's decision, is 'devoid of competent evidence to support' the decision," *Little v. Little,* 193 Ariz. 518, 520, ¶ 5 (1999) (quoting *Fought v. Fought*, 94 Ariz. 187, 188 (1963)).

¶7          As relevant here, A.R.S. § 25-403.02(B) (2018) requires the superior court to adopt a parenting plan that is "[c]onsistent with the child's best interests in § 25-403" and that "maximizes [each parent's] respective parenting time."  Section 25-403 (A) (2018) requires the court to determine parenting time "in accordance with the best interests of the child."  Further, § 25-403(A) states:

> The court shall consider all factors that are relevant to the child's physical and emotional well-being, including:
>
> 1. The past, present and potential future relationship between the parent and the child.
>
> 2. The interaction and interrelationship of the child with the child's parent or parents . . . .
>
> 3. The child's adjustment to home, school and community.

4. If the child is of a suitable age and maturity, the wishes of the child as to legal decision-making and parenting time.

5. The mental and physical health of all individuals involved.

¶8        In findings and conclusions issued in support of the decree's parenting-time provisions, the superior court stated:

The primary focus concerning parenting time is the best interest of the children and not the parents. If the interests of parents are more important than children, then children, like timeshares, would always be equally time-shared.

A totality of circumstances tip the scales in favor of designation of [Wife] as primary residential parent.

A.        [Wife] has been the primary care provider for the children prior to this action. The children have historically spent more time with [Wife] than [Husband] since their birth.

B.        The children have not fully adjusted to equal parenting time during the pendency of the temporary orders. The court finds the children want and need to spend more time with [Wife].

C.        The military duties of [Husband] often make him unavailable during his parenting time resulting in the children spending too much time with the paternal grandparents relative to time they could be with [Wife].

D.        The children are girls who naturally will gravitate more to [Wife] as they mature.

E.        The experience during the temporary orders has been unreasonable occasionally. . . . The court finds [Husband] has been comparatively more unreasonable and inflexible than [Wife] [in agreeing to trade parenting time]. In particular, [Husband] has placed his interest over the best interest of the children in not allowing more frequent weekend parenting time by [Wife] regardless of the strict terms of the stipulated temporary order.

F.        It is unlikely the parties will both reside in Yuma during the minority of all the children. Significant

geographical separation of the parties precludes equal parenting time. Changing equal parenting time now would be less disruptive than in the future.

G. Children should have a primary home and bedroom where special items like collections, posters and private things are maintained as opposed to forcing children to equally divide their time and things and clothes equally between two homes.

H. A primary residence promotes stability and continuity for children.

¶9 With one exception, we agree with Husband that the findings the court made in determining parenting time are contrary to law and not supported by the evidence.

¶10 First, the court legally erred by applying a presumption against equal parenting time. Nearly all of the court's findings disregarded the statute's starting point, which is that, when consistent with a child's best interests, each party's parenting time should be maximized. A.R.S. § 25-403.02(B). Wife offers no legal argument in defense of the court's broad generalization that "[c]hildren should have a primary home and bedroom . . . as opposed to forcing children to equally divide their time and things and clothes equally between two homes." And no evidence in the record supports application of that principle here. By its nature, dissolution of a marriage compels children to divide their time between the homes of their two parents. That being the case, nothing in the law allows a court considering the best interests of the children to presume that one of those homes must be the children's "primary" residence.

¶11 At trial, Wife rejected the notion of equal parenting time, protesting without offering specifics that her "children need more consistency of staying in one place." But the court's broad finding that "[a] primary residence promotes stability and continuity for children" is supported neither by the law nor the evidence in the record. When each parent can provide a safe, loving and appropriate home for the children, there is no place in a parenting-time order for a presumption that "stability and continuity" require the children to spend more time in one home than the other. Here, Wife offered no evidence that Husband is not a good parent, nor that his home is inappropriate for the children. To the contrary, she testified Husband has the girls' best interests at heart, and, when asked to describe his strengths as a parent, she testified he is "very loving," plays

with the girls and is good "at discipline." She also testified the girls enjoy spending time at Husband's home.

¶12 Second, the court erred by basing parenting time on its finding that the parties' three girls "naturally will gravitate more to [Wife] as they mature." The implicit premise of this finding is that, as a general proposition, girls need to spend more time with their mother than their father. Nothing in the law nor the record supports that proposition.

¶13 Under the Equal Protection Clause of the Fourteenth Amendment, gender-based presumptions by the government require an "exceedingly persuasive justification." *United States v. Virginia*, 518 U.S. 515, 531 (1996). In this inquiry, "overbroad generalizations about the different talents, capacities, or preferences of males and females" cannot suffice. *Id.* at 533. The Arizona legislature has recognized this principle by mandating that in determining parenting time, a "court shall not prefer a parent's proposed plan because of the parent's or child's gender." A.R.S. § 25-403.02(B).[2]

¶14 Wife argues it was "reasonable for the court to anticipate that the children's needs for a stable maternal influence would increase rather than decrease as they entered puberty." She cites no factual or legal authority, however, for that proposition. Nor does she offer any explanation for why an equal parenting-time plan would not allow her to maintain a "stable maternal influence" over her girls. Wife also argues the finding is supported by § 25-403(A)(2), which directs a court considering best interests to take into account "[t]he interaction and interrelationship of the child with the child's parent or parents." But there was no evidence before the court that Wife's relationship or interaction with the children was better than Husband's. By Wife's logic, all things being equal, the gender of the children necessarily would drive parenting time, a governing

---

[2] Arizona law once required a presumption in favor of women with respect to the custody of young children. *See* A.R.S. § 14-846(B) (1956) ("[O]ther things being equal, if the child is of tender years, it shall be given to the mother. If the child is of an age requiring education and preparation for labor or business, then to the father."). *See Dunbar v. Dunbar*, 102 Ariz. 352, 354 (1967) (applying "tender years" statute as "the declared policy of this state"). The legislature repealed the statute in 1973. 1973 Ariz. Sess. Laws, ch. 75, § 3.

principle flatly inconsistent with principles of gender equality and § 25-403.02(B).[3]

¶15　　　　　Third, the court erred by favoring parenting time for Wife over Husband based on the fact that Wife had been the children's primary caregiver during the marriage. Whether one or the other parent was the primary caregiver during the marriage used to be one of the factors the court was required to consider in deciding parenting time. *See* A.R.S. § 25-403(A)(7) (2005) ("Whether one parent, both parents or neither parent has provided primary care of the child."). But the legislature removed that factor in 2012 when it substantially revised the decision-making and parenting-time statutes. 2012 Ariz. Sess. Laws, Ch. 309, § 5 (2d Reg. Sess.).[4]

¶16　　　　　Dissolution necessarily will disrupt the family dynamic whenever one parent has been the primary earner while the other has stayed home to care for the children. Upon dissolution, the wage earner usually must find child care and the stay-at-home parent must find work. To be sure, each parent's relationship with a child before dissolution is one of the factors a court must consider in determining parenting time. *See* A.R.S. § 25-403(A)(1) (court shall consider "past, present and potential future relationship between the parent and the child"). Absent evidence in the record that a parent will be unable to properly care for a child, however, the superior court errs when it presumes – as the court did here – that the child's best interests necessarily are served by affording more parenting time to the former stay-at-home parent than to the other.

¶17　　　　　Fourth, the court also erred by basing its parenting-time determination on a finding that, given it was unlikely that Husband and Wife would remain in Yuma until the children were grown, "[c]hanging

---

[3]　　　When Father moved for reconsideration of the parenting-time order based in part on this finding, the court denied the motion, stating that "[t]he gender of the children and the parties was a very minor factor in the totality of circumstances." On the record presented and given the court's other erroneous findings, we cannot determine that its parenting-time ruling was unaffected by its improper gender-based presumption.

[4]　　　*Cf.* Principles of the Law of Family Dissolution § 2.08 (American Law Institute 2002) (as a general matter, "court should allocate custodial responsibility so that the proportion of custodial time the child spends with each parent approximates the proportion of time each parent spent performing caretaking functions for the child prior to the parents' separation").

equal parenting time now would be less disruptive than in the future." Over their 11-year marriage, Husband's various reassignments as a Marine required the couple to relocate a half-dozen times. Although the court did not err by implicitly finding that Husband may be reassigned again, no evidence in the record supports the pronouncement that it would be less disruptive to the children to reduce their time with their father now than to do so later. Indeed, as Husband argues, it belies logic to limit a military member's parenting time simply because he or she may be deployed in the future. If and when Husband is reassigned, A.R.S. §§ 25-408 (2018) and -411 (2018) will govern how parenting time is to be altered under the circumstances then presented.

¶18 Fifth, the court erred by limiting Husband's parenting time based on its finding that his military duties "often make him unavailable during his parenting time resulting in the children spending too much time with the paternal grandparents." Husband's parents sold their house in Oregon and moved to Yuma shortly before Wife petitioned for dissolution, and they now share a home with Husband so that they may care for the children when he is unable to do so. During the marriage, Husband's job took him away from home during a pair of seven-month overseas deployments and on training missions for a few weeks at a time. Husband testified, however, that since June 2016, his assignment in Yuma had allowed him to work "[b]anker's hours." At the same time, Wife testified that her work as a firefighter/emergency medical technician may require shift work long past regular business hours, including some nights and weekends. In short, both parents' jobs will require extended periods of child care, and Husband's parents have agreed to care for the children whenever *either* parent is unable to do so. Further, Father's proposed parenting plan included a "first right of refusal" under which each parent would offer the other the opportunity to care for the children when the first parent is unavailable for a period of four hours or longer. Mother, meanwhile, offered no criticism of the girls' grandparents as care providers, and in fact testified that she would be fine with them watching the girls after school in the afternoons if her work did not allow her to do so. Under these circumstances, the superior court abused its discretion when it found that Husband's use of his parents for child care weighed against his request for equal parenting time.

¶19 Sixth, the court also erred by denying equal parenting time based on its findings that the girls "have not fully adjusted to equal parenting time during the pendency of the temporary orders" and that they "want and need to spend more time with" Wife. Crafted to accommodate the demands of Wife's school and training regimes, the stipulated

temporary orders granted Husband parenting time over what became a four-day weekend, from noon on Thursday through Sunday evening, week in, week out. On that schedule, the girls naturally missed being able to spend weekends with Wife. Although Wife testified the girls said they wanted to spend weekends with her, she acknowledged that was because they had been with Husband every weekend under the temporary orders.

¶20 The only other evidence supporting the court's finding that the children had "not fully adjusted" to equal parenting time during temporary orders was Wife's testimony in September 2016 that one of the girls complained of stomach pain and sleeplessness, issues Wife attributed to the child's unwillingness to leave Wife's home for Husband's. But by the time trial resumed two months later, Wife testified the girl's problems with sleeping were "getting better now." Further, both parents testified the girls were doing well in school.

¶21 On this record – and in the absence of testimony of a therapist, counselor or other expert – the evidence was entirely insufficient to support the court's implicit finding that the children would not be able to "adjust" to an equal parenting time schedule that afforded a fair measure of weekends to Wife.

¶22 As for the court's lone remaining finding in support of its parenting-time determination, Husband argues there was no evidence that he was more unreasonable and inflexible than Wife in negotiating trades of parenting time before trial. Husband contends he offered Wife additional parenting time on four occasions during the period of temporary orders even though Wife had more parenting time overall. He also contends Wife was more unreasonable regarding a summer vacation dispute and never responded to the equal parenting plan he offered in settlement. For her part, Wife testified Husband did not offer *additional* parenting time, but only offered weekend parenting time in *exchange* for an equal amount of her parenting time. She also recounted several instances in which Husband refused to allow her to pick up the children from school when he was working or take them overnight when he traveled. Although Husband was strictly following the temporary orders in these instances, the court properly could view his conduct as unreasonably inflexible. *See* A.R.S. § 25-403(A)(6) ("Which parent is more likely to allow the child frequent, meaningful and continuing contact with the other parent.").

¶23 We generally defer to the weight the superior court gives to conflicting testimony. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347-48, ¶ 13 (App. 1998). Although not every error in a parenting-time decision

warrants a new hearing, given the several errors noted above, we reverse the parenting-time order and remand for a new hearing consistent with § 25-403(A).  *See Little,* 193 Ariz. at 520, ¶ 5; *Hart v. Hart*, 220 Ariz. 183, 188, ¶ 19 (App. 2009) (vacating parenting-time determination when court's order showed it had applied incorrect legal standard).

## B.      Military Retirement Pay.

**¶24**          As a Marine, Husband is entitled to receive military retirement benefits upon completing 20 years of service.  *See Howell v. Howell*, 137 S. Ct. 1400, 1402-03 (2017).  Under federal law, state courts may treat the portion of a serviceperson's military retirement earned during marriage as community property, divisible upon divorce.  *See* 10 U.S.C. § 1408(c)(1) (2018); *see also Edsall v. Superior Court*, 143 Ariz. 240, 241-42 (1984).  Thus, and under Arizona community-property law, Wife is entitled to one-half of the military retirement benefits Husband earned during the marriage.   Applying that principle, the superior court divided the community's interest in Husband's military retirement.  It also ruled that if Husband voluntarily continues to serve after he becomes eligible to retire, he must pay Wife what she would have received from the government if he had retired.  On appeal, Husband argues the court erred by effectively ordering him to indemnify Wife against a choice he might make to work more than 20 years.  He also argues the court made other errors in addressing his military retirement.

**¶25**          The court has broad discretion in apportioning community property.  *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007).  We review the allocation for an abuse of discretion, view the evidence in the light most favorable to upholding the court's ruling and will affirm the allocation if reasonable evidence supports it.  *Id.*

### 1.      Mandatory payment to Wife at 20 years.

**¶26**          In *Howell*, issued just a week before the decree in this case, the Supreme Court held that state courts may not employ equitable principles to reach results that are inconsistent with federal statutes governing military retirement.  137 S. Ct. at 1405-06.  The retired military member in *Howell* waived a portion of his retirement pay in exchange for disability benefits.  *Id.* at 1402.  Although the waiver garnered a tax advantage for the retired military member, it reduced his former spouse's monthly benefit, which was calculated based on his retirement pay.  *Id.* at 1403-04.  The Arizona Supreme Court upheld a superior court order requiring the military member to indemnify his former spouse for the consequences of

his waiver. *Id.* The United States Supreme Court reversed, holding the superior court's order was inconsistent with 10 U.S.C. § 1408(c), which allows division of military retirement pay but not disability benefits. *Howell*, 137 S. Ct. at 1403, 1405 (citing *Mansell v. Mansell,* 490 U.S. 581, 589 (1989)). By its ruling, the Court rejected the state court's exercise of its equitable powers to grant the former spouse an interest that federal law did not allow. 137 S. Ct. at 1405-06.

¶27 Here, the same federal statute supports Husband's argument that, when a military spouse chooses not to retire after 20 years, a state court may not order him to indemnify his former spouse against the financial consequences of his decision to postpone retirement. Although § 1408(c)(3) allows state courts to treat retirement pay as community property in a dissolution, the statute specifically states that it "does not authorize any court to order a [military] member to apply for retirement or retire at a particular time in order to effectuate any payment under this section." Wife argues the superior court did not compel Husband to retire, but the order requiring Husband to pay Wife what she would receive from the government upon Husband's retirement is no different in principle from the equitable remedy *Howell* disapproved.

¶28 Wife nevertheless argues the superior court order is proper under *Koelsch v. Koelsch*, 148 Ariz. 176 (1986). In that case, the Arizona Supreme Court addressed the division of a community property interest in public retirement benefits when the employee is vested but wants to continue working, thereby delaying the former spouse's receipt of retirement pay. *Id.* at 180. The court held that in such a situation, the superior court may order the employee to indemnify the former spouse for what the former spouse would have received from the community's share of the retirement. *Id.* at 185.

¶29 But *Koelsch* did not address the division of military retirement pay, a matter exclusively governed by federal law. Pre-*Howell* cases were divided in addressing whether a military spouse who wants to keep working may be ordered to indemnify the former spouse. *Compare In re Marriage of Castle*, 225 Cal. Rptr. 382, 387 (Cal. App. 1986), and *Wilder v. Wilder*, 534 P.2d 1355, 1359 (Wash. 1975) (upholding indemnification), *with Alvino v. Alvino*, 659 S.W. 2d 266, 271-72 (Mo. App. 1983); *Longo v. Longo*, 663 N.W. 2d 604, 609, 610 (Neb. 2003); and *Kendrick v. Kendrick*, 902 S.W. 2d

918, 929 (Tenn. App. 1994) (military retirement is payable to non-military spouse only upon the military spouse's retirement).[5]

¶30        Notwithstanding the prior division of authority, the question now has been resolved by *Howell*, which holds that a state court may not do indirectly what 10 U.S.C. § 1408 directly forbids. The superior court here had no authority to order Husband to indemnify Wife in the event he does not decide to retire when eligible at 20 years. Although federal law allows a state court to award a former spouse a share of a military member's retirement benefits, it does not allow the court to order the military member to indemnify his former spouse if he decides to continue working past the date on which he could retire.[6]

### 2.        Survivor benefit premium.

¶31        The superior court also erred in ordering that Wife's share of the community's interest in Husband's military retirement cannot be reduced by payments he might make to buy a survivor benefit for a future spouse.

¶32        Pursuant to § 1408, the amount of military retirement pay that may be divided as community property does not include amounts "deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse to whom payment of a portion of such member's retired pay is being made pursuant to a court order under this section." 10 U.S.C. § 1408(a)(4)(A)(iv), (c)(1). The annuity the statute

---

[5]        *See also* Maj. Michael H. Gilbert, *A Family Law Practitioner's Road Map to the Uniformed Services Former Spouses Protection Act*, 32 Santa Clara L. Rev. 61, 77-78 (1992) (as a practical matter, such orders force a military spouse to retire).

[6]        The ratio by which to derive the community's share of Husband's military retirement is (1) the number of months Husband and Wife were married while Husband was in the service divided by (2) the number of Husband's months in service for retirement purposes, as determined by the military. The amount of military retirement pay due a serviceperson (i.e., the number to which the ratio is applied) is a matter for the military to determine. Therefore, and because we reverse the superior court's order that Husband must indemnify Wife if he does not retire after 20 years of service, we will not address the parties' respective contentions about the specifics of the amount Wife ultimately may receive as her share of the community's interest in Husband's retirement.

references is the Survivor Benefit Plan, which will make monthly payments to the surviving spouse of a military member to help make up for the loss of retirement benefits upon the member's death. *See* 10 U.S.C. §§ 1447, 1448 (2018). When a military member buys the annuity for "a spouse or former spouse to whom payment of a portion of such member's retired pay is being made pursuant to a court order," the price of the annuity is deducted from the amount of his or her retirement pay subject to division as community property. *See* 10 U.S.C. § 1408(a)(4)(A)(iv).

¶33      The decree adopts language Wife proposed that is contrary to the federal statute's treatment of survivor's annuity premiums. The decree states, "In the event [Husband] elects a . . . survivor annuity in favor of *any other person*, such election shall *not* reduce" Wife's share of Husband's retirement pay. (Emphasis added.) By mandating that Wife's share of Husband's retirement pay will not be reduced by the cost of any survivor's annuity Husband might purchase, the decree disregards the statutory mandate that retirement pay subject to division as community property *shall be reduced* by amounts deducted for an annuity in favor of "a spouse or former spouse to whom payment of a portion [of military retirement] is being made pursuant to a court order."

¶34      Wife's defense of the decree's treatment of survivor-annuity premiums is based on its application to an annuity Husband might purchase for a new spouse if he remarries. Wife argues the statute mandates that the cost of an annuity for a current or former spouse shall be deducted from retirement pay only if the annuity is court-ordered. Thus, under her interpretation of the statute, if Husband were to remarry and voluntarily buy an annuity for his new spouse, Wife's interest in his retirement pay would not be reduced by the cost of that annuity.

¶35      We do not interpret the statute that way. In the normal case, there is no need for a court order requiring a military member to purchase an annuity for his or her current spouse – generally speaking, only payments on behalf of a *former* spouse require a court order. The text of the statute is consistent with that principle. The provision at issue applies when one receives a portion of a military member's retirement pay "pursuant to a court order *under this section*." 10 U.S.C. § 1408(a)(4)(A)(iv) (emphasis added). The "section" to which the text refers, of course, is § 1408 – which was enacted specifically to grant state courts the power to apply state law to divide military retirement pay upon dissolution of a military member's marriage. *See* 10 U.S.C. § 1408(a)(2) ("'court order' means a final decree of divorce, dissolution, annulment or legal separation . . ."); *Howell*, 137 S. Ct. at 1403 (describing § 1408 as Congress's response to *McCarty v. McCarty*,

453 U.S. 210 (1981), which had held that federal law preempted community-property treatment of military retirement). The statute has nothing to say about an intact marriage; contrary to Wife's argument, its reference to one who receives a distribution of retirement pay "pursuant to a court order under this section" logically cannot refer to a *current* spouse because "this section" only applies in proceedings to dissolve or otherwise effectively end a marriage.[7]

¶36      Accordingly, under § 1408(a)(4)(A)(iv), military retirement pay subject to division by a state court as community property is reduced by amounts a serviceperson pays for an annuity to (1) a spouse or (2) a former spouse when the payment to the former spouse is mandated by a court order. The decree here violates that provision by ordering that Wife's interest in Husband's retirement shall not be reduced by Husband's purchase of an annuity for "any other person."

### 3.      Cost-of-living increases and REDUX/career status bonus.

¶37      Husband argues the superior court erred by awarding Wife a proportionate share "of any cost of living or other post-retirement" increase in his military retirement pay. Husband acknowledges that § 1408(a)(4)(B) allows division of certain specified cost-of-living increases, but argues the decree goes beyond the statute in dividing any "other post-retirement" increases. Husband is correct. Pursuant to § 1408(a)(4)(B), military retirement pay subject to division as community property includes expressly defined cost-of-living increases; the statute makes no reference to any other increases. On remand, the superior court shall remove the reference to "other post-retirement increases" from the decree.

¶38      The decree also provides that in the event Husband elects to receive retirement benefits pursuant to the Military Reform Act of 1986 ("REDUX benefits") and receives a Career Status Bonus ("CSB"), Wife shall be entitled to a proportionate share of these benefits. Husband contends

---

[7]      Cases interpreting the statute to the contrary do not address the significance of the provision's use of the phrase "under this section." *See Fricks v. Fricks*, 771 So. 2d 790, 793 (La. App. 2000); *Neese v. Neese*, 669 S.W. 2d 388, 391 (Tex. App. 1984).

the superior court erred in dividing these benefits because Wife did not make any claim to them in her pretrial statement or at trial.[8]

**¶39**        Wife indeed did not ask the superior court to allocate these benefits, and the record contains no evidence as to how they are calculated. Nonetheless, because we are remanding the military retirement provisions of the decree, and REDUX and CSB may be retirement-type benefits in which the community is entitled to share, the superior court on remand shall determine how to allocate these benefits should Husband elect to receive them.

## C.        Equalization Payment.

**¶40**        The superior court denied Husband's request for an equalization payment based on $36,539 in community expenses (mainly the mortgage, utilities and groceries) he paid after Wife served the dissolution petition. Husband paid more than $30,000 of the expenses at issue during the several months leading up to entry of temporary orders, when he was working but Wife had no full-time job and was without temporary spousal maintenance, and when he continued to live with her in the marital home. The superior court reasoned that, "in fairness," it could not grant Husband's request for an equalization payment without also retroactively modifying temporary orders, implying that, under the circumstances, Wife had an equitable right to financial assistance from Husband during the applicable period. At the same time, the court also denied Wife's request for an equalization payment for an additional $20,000 in property and private retirement savings accounts Husband received under the decree.

**¶41**        Husband argues the court erred as matter of law, citing *Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶¶ 15, 19 (App. 2017), in which we held a spouse's post-petition payment of community expenses is not presumed to be a gift of sole funds to the community. Wife argues *Bobrow* is

---

[8]        These benefits are similar to military retirement benefits that might be available to Husband after 15 years of service. *See* 37 U.S.C. § 354 (2018); *Boedeker v. Larson,* 605 S.E. 2d 764, 771 (Va. App. 2004). After 15 years of service, servicepersons who entered the military after July 31, 1986 can opt for the CSB and REDUX retirement plan, under which a member is eligible to receive a $30,000 bonus upon reaching his or her fifteenth year of active service. If the member makes that election, however, his or her retirement is calculated at a reduced rate. *See* https://www.dfas.mil/retiredmilitary/plan/estimate/csbredux.html (last visited June 19, 2018).

distinguishable, and, in any event, the overall property allocation was equitable.

**¶42**       The parties in *Bobrow* had a premarital agreement that Husband would not be obligated to pay community expenses after either party filed a petition for dissolution.  241 Ariz. at 594, 595-96, ¶¶ 5, 14.  On that basis, the superior court found the husband's post-petition payments were voluntary and presumed to be a gift to the community.  *Id.* at 594, ¶ 5.  On appeal, this court held the presumption that a spouse intends a gift to the community when he or she uses separate funds to pay community expenses does not apply to post-petition expenditures.  *Id.* at 596, ¶ 15.

**¶43**       In eliminating the gift presumption, *Bobrow* instructed courts to account for post-petition payments made from separate property in equitably dividing community property.  *Id.* at 596, ¶ 19.  The superior court here did not apply a gift presumption and otherwise did not abuse its discretion in denying both parties' requests for equalization payments.  Given the financial disparity between Husband and Wife at the time, the superior court had discretion to retroactively grant temporary spousal maintenance.  *See* A.R.S. § 25-318 (2018); *Maximov v. Maximov*, 220 Ariz. 299, 301, ¶ 7 (App. 2009) (citing Ariz. R. Fam. Law P. 81(A) (authorizing court to direct entry of judgment *nunc pro tunc* as justice may require)).  The court's implicit finding that Wife would have been unable to share the expenses at issue absent spousal maintenance is supported by the record.

**¶44**       Because the overall property allocation was equitable, we affirm the court's denial of Husband's request for reimbursement.

## D.     Attorney's Fees Award.

**¶45**       In awarding attorney's fees to Wife, the court found neither party was unreasonable, but because of the disparity in their incomes, Husband should pay a proportionate share of Wife's fees.  *See* A.R.S. § 25-324(A) (2018).  Based on their comparative earnings, the court found that Husband should bear 67 percent of the attorney's fees incurred in the case; Wife, 33 percent.  But in applying those ratios to the parties' respective fees, the court reduced both parties' paralegal rates to $50 an hour (from $150 charged by Wife's lawyer and $175 charged by Husband's lawyer).

**¶46**       In moving for reconsideration, Husband's counsel, whose office is in Phoenix, argued that his paralegal had more than 20 years' experience in family law and avowed that an hourly rate of $175 is reasonable in most counties in the state.  He repeats those arguments on appeal, and Wife, represented by Yuma counsel, does not argue to the

contrary. We review an award of attorney's fees for an abuse of discretion. *Magee v. Magee*, 206 Ariz. 589, 590, ¶ 6 (App. 2004).

¶47      Neither party objected to the other's paralegal rates nor the amount of time their respective paralegals incurred. Nevertheless, in reducing the rates, the superior court stated:

> The court finds that $175 and $150 an hour for paralegal time is unreasonable and without sufficient evidence of local practice. Such a rate approximates three times the hourly rate of a judge. . . . Many lawyers do not charge anything for so-called paralegal time and secretarial time.

¶48      The court abused its discretion by *sua sponte* reducing the paralegal charges to $50 an hour. The $150 rate charged by Wife's Yuma counsel, and her failure to object to Husband's $175 rate, belies the court's finding that the parties had offered no evidence of rates charged by Yuma practitioners for work done by paralegals. More broadly, the court's pronouncement that "[m]any lawyers do not charge anything for so-called paralegal time" is demonstrably incorrect. To the contrary, trained, experienced paralegals can be invaluable in providing efficient legal services to the clients of a law firm. *See Ahwatukee Custom Estates Mgmt. Ass'n v. Bach*, 193 Ariz. 401, 403, ¶ 9 (1999) ("[L]egal assistant and law clerk services may properly be included as elements in attorneys' fees applications and awards because these individuals typically have acquired legal training and knowledge sufficient to permit them to contribute substantively to an attorney's analysis and preparation of a particular legal matter." (quotation omitted)). And the court's reference to a judge's "hourly rate" is simply inapplicable. The effective hourly rates of judges – like those of public defenders, prosecutors and other government lawyers – are not evidence of a reasonable hourly rate in private practice.

¶49      As he did in the superior court, Husband also argues the court erred by finding that Wife did not act unreasonably in the litigation. He contends Wife was unreasonable in failing to make or respond to settlement offers and by providing untimely discovery responses. Wife, on the other hand, contends Husband failed to follow through with a settlement agreement reached early in the litigation and failed to provide requested discovery. The superior court was in the best position to consider these competing allegations of unreasonableness. *See Gutierrez*, 193 Ariz. at 347, ¶ 13. The record supports the court's conclusion that attorney's fees were not warranted based on unreasonable conduct.

¶50 Husband does not dispute the superior court's finding that disparity in the parties' finances warranted an award of fees to Wife. We affirm that finding, but, for the reasons stated, reverse and remand the award because the court abused its discretion in reducing the parties' paralegal rates.

### E. Attorney's Fees and Costs on Appeal.

¶51 Wife requests an award of attorney's fees and costs on appeal pursuant to A.R.S. § 25-324. In the exercise of our discretion, we decline to award attorney's fees to Wife. Husband did not take unreasonable positions on appeal and, after the award of spousal maintenance, the financial disparity between the parties is not great. We award Husband his costs on appeal pursuant to A.R.S. § 12-342 (2018).

### CONCLUSION

¶52 We reverse the parenting-time provisions in the decree and remand for a new hearing on parenting time. We reverse the decree's provisions concerning Husband's military retirement and the order awarding attorney's fees to Wife and remand for further proceedings consistent with this opinion. In all other respects, we affirm the decree.

