NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

KORRI WRIGHT, *Petitioner/Appellant,*

*v.*

BRIAN WRIGHT, *Respondent/Appellee.*

No. 1 CA-CV 18-0675 FC
FILED 10-17-2019

Appeal from the Superior Court in Yuma County
No. S1400DO201401453
The Honorable John P. Plante, Judge

**AFFIRMED**

COUNSEL

Mary Katherine Boyte, PC, Yuma
By Mary K. Boyte Henderson
*Counsel for Petitioner/Appellant*

Law Office of Robert E. Siesco, Phoenix
By Aaric A. Siesco, Robert E. Siesco
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge James B. Morse Jr. joined.

---

**J O H N S E N**, Judge:

¶1            Korri Wright ("Mother") appeals from the superior court's order denying her petition to relocate her four children from Yuma to San Diego. The court based its decision on findings that were supported by the evidence and reasonably weighed and applied the statutory considerations bearing on relocation. Therefore, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2            The parties are the parents of four children, the youngest of whom, LB, was diagnosed with a genetic disorder after the parties divorced in 2015. LB initially was diagnosed with Autism Spectrum Disorder, but that diagnosis later was changed to Rubinstein-Taybi Syndrome ("RTS"), which is characterized by developmental delays, cognitive difficulties and medical complications. The parties' three older children range in age from 11 to 15, and LB is now six years old. The children have lived in Yuma most of their lives.

¶3            In 2016, Mother petitioned to relocate the children to San Diego, claiming LB could receive better medical services and developmental therapies there than were available in Yuma. Mother also asserted that both parents had extended family support available in San Diego. She also contended that Brian Wright ("Father") could operate his Yuma-based business from San Diego. Father objected to the relocation, arguing that LB received adequate services in Yuma with occasional travel to Phoenix to see medical specialists. Father also denied that he could run his business from San Diego.

¶4            After a four-day evidentiary hearing, the superior court denied Mother's petition. In Mother's first appeal, this court vacated the order because the superior court did not make the findings required by

2

Arizona Revised Statutes ("A.R.S.") sections 25-403 (2019) and -408 (2019).[1] *See Wright v. Wright*, 1 CA-CV 17-0505 FC, 2018 WL 2050091, at *2, ¶¶ 8-9 (Ariz. App. May 3, 2018) (mem. decision). On remand, the superior court reviewed the recording of the evidentiary hearing, made written findings regarding the applicable statutory factors and again denied Mother's petition to relocate. Mother timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. § 12-2101(A)(2) (2019).

## DISCUSSION

¶5 In considering a petition for relocation, the court must base its decision on the best interests of the children. A.R.S. § 25-408(G). In determining the children's best interests, the court shall consider all relevant factors listed in §§ 25-403 and -408(I). We review the court's decision on a relocation petition for an abuse of discretion and do not reweigh or redetermine the evidence. *Murray v. Murray*, 239 Ariz. 174, 176, ¶ 5 (App. 2016); *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009). We view the evidence in the light most favorable to sustaining the court's findings and determine whether that evidence reasonably supports those findings. *Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 17 (App. 2015). An abuse of discretion occurs when the record fails to provide substantial evidence to support the court's findings. *Walsh v. Walsh*, 230 Ariz. 486, 490, ¶ 9 (App. 2012).

**A. Father's Objection to Mother's Petition to Relocate Is Untimely, and Mother Did Not Waive Her Right to Appeal.**

¶6 Father argues that Mother's petition to relocate did not contain detailed facts as required by A.R.S. § 25-411(L) (2019). Father did not raise that objection before the evidentiary hearing; therefore, he has waived it. *In re Marriage of Dorman*, 198 Ariz. 298, 302, ¶ 11 (App. 2000) ("Errors in preliminary procedures, such as those in § 25-411, must be addressed prior to a resolution on the merits.").

¶7 We also reject Father's contention that Mother waived any objections to the superior court's most recent findings because she did not file a post-order motion. Such motions, although sometimes helpful, are not required to preserve an argument that the evidence does not support the court's findings. *See Nold v. Nold*, 232 Ariz. 270, 273, ¶ 10 (App. 2013).

---

[1] Absent material revision after the relevant date, we cite the current version of a statute or rule.

**B.      Evidence in the Record Supports the Superior Court's Findings.**

**1.      Effect of reduced parenting time with Father.**

¶8          Mother suggests that Father would have followed her and the children to San Diego if the superior court had allowed the relocation. The court, however, found that Father would "most likely not be able to move due to his business and financial demands," and evidence in the record supports that finding. The necessary implication of that finding is that Mother's relocation with the children to San Diego would diminish Father's parenting time. The superior court found relocation "would take away an outstanding parent who has the child at least one-half of the time. . . . This would be a tragedy for all of the children." The result, the court found, "would likely be an emotional trauma to [LB] and not beneficial to the other children."

¶9          The court acknowledged that better medical services would be available for LB in San Diego, but expressly placed more weight on maintaining equal parenting time, finding that "[p]arent participation is the most critical aspect of [LB's] development[]," and close contact with his parents and siblings was "most important" for LB. A.R.S. § 25-408(I)(7). Mother contends the evidence does not support these findings and argues the court gave undue weight to the effect of a reduction in Father's parenting time.

¶10          Mother asserts the court's findings are inappropriate generalizations that lack support from LB's therapists or other medical providers. *See Barron v. Barron*, 246 Ariz. 580, 587, ¶ 21 (App. 2018) (court abused its discretion when no factual basis or testimony from a therapist, counselor or expert supported its finding that children would not be able to adjust to change in parenting time), *vacated in part on other grounds*, 246 Ariz. 449 (2019). Father, on the other hand, cites the testimony of Dr. Feder, a child psychiatrist specializing in developmental disorders, that it is "optimal" for LB to have both parents as involved with him as possible, and Dr. Subbu's testimony that both parents are important. Although the court's findings are not an exact restatement of the physicians' testimony, both physicians confirmed that parental involvement is important for LB.

¶11          Mother acknowledged Father's importance in LB's life and his significant participation in all the children's daily activities. The evidence also established that the parties currently live a half-mile apart, sharing convenient access to most of the children's activities. Under the parties' current living arrangements, which the court characterized as "ideal," the

children are accustomed to and benefit from spending equal time with both parents.

¶12　　　　　Moreover, we disagree with Mother that the court's conclusions about the significance of both parents' active involvement in the children's lives constituted findings of fact.  When the court found that it was *most important* that both parents remain equally involved with the children, the court was balancing the competing concerns this difficult case presents.  Mother may disagree about what is *most important*, but there was evidence to support the court's factual findings that a relocation would dramatically impair the beneficial living and parenting-time arrangements the children have enjoyed since the divorce and that having both parents involved in their lives is important.

### 2.　　　Financial considerations.

¶13　　　　　Mother also argues the superior court failed to consider the financial advantages the proposed relocation would provide her and focused instead only on the disadvantages it would impose on Father.  The court did not ignore this evidence.  Instead, it found Mother was overstating the financial benefits of relocation.  The court found if it allowed Mother to relocate, she would continue to rely on Father and her parents for support while living with the children in a much smaller home, and that her new job would not increase the parties' combined income.  Further, the court addressed the financial hardships that would occur if Father moved to San Diego and ultimately concluded he had greater financial stability in Yuma.  *See* A.R.S. § 25-408(I)(3).  The evidence supports these findings.

### 3.　　　Need for travel and the adequacy of services for LB.

¶14　　　　　Mother argues the superior court placed Father's interests above LB's when it weighed the inconvenience of long-distance parenting time against the child's current need to travel to Phoenix for medical services.  In considering the children's "adjustment to home, school and community," A.R.S. § 25-403(A)(3), the court found that although LB receives some therapies in Yuma, the family must take him to Phoenix for all his major medical services.  As for the prospective advantage of the relocation, *see* A.R.S. § 25-408(I)(3), the court found that although there "are more and better medical facilities in San Diego[,]" there are "adequate therapies" available in Yuma and major medical services available in Phoenix.  The court again noted it was "indisputable" that facilities in San Diego were superior to those in Yuma when it considered the reasons for Mother's request.  *See* A.R.S. § 25-408(I)(7).

¶15        Mother's argument that relocation is in LB's best interests rests on the premise that adequate services are not available in Yuma. She cites the testimony of Dr. Feder, who explained that therapies for autism and RTS are not interchangeable and that trying to teach LB's current therapists the best methods for treating RTS would unnecessarily delay his progress.

¶16        The evidence, however, showed that therapies a developmental pediatrician had recommended for LB are available in Yuma. Father also testified there was a facility in Yuma that provided the "evidence-based" therapy Dr. Feder had recommended. Although Mother challenged the quality of the services available in Yuma, she did not establish that LB would suffer any actual developmental delay or harm from relying on therapy available in Yuma.[2] To the contrary, the evidence showed LB has shown improvement after receiving these therapies.

¶17        Mother also argues the superior court ignored evidence that LB's medical needs require frequent travel to Phoenix, a six-hour round trip. Mother testified the travel is expensive and it is difficult to arrange child care for the other children. At the time of the hearing, LB needed an MRI, an EEG and a surgery that would require a pediatric anesthesiologist, none of which were available in Yuma. There was no clear indication, however, how frequently LB will need to travel for additional medical services in the future.

¶18        The court did not ignore the need for travel; it acknowledged that LB would need to be driven to Phoenix for some medical services if the parties remained in Yuma. Yet, the court also noted that significant travel would be necessary for Father's parenting time if Mother relocated.[3]

---

[2]        Both parties testified that some of LB's occupational therapy now is done online because of a lack of available therapists. It is not clear from the record whether LB's current special-needs preschool constitutes a "developmental preschool," as the developmental pediatrician recommended. The evidence showed that the Head Start program LB was attending at the time of the hearing planned to reduce his hours because it could not adequately address his needs.

[3]        For the first time on appeal, Mother suggests that Father could exercise his parenting time in San Diego, thus alleviating LB's need to travel. She waived this argument by failing to raise it in the superior court.

**¶19** The court did not place Father's parenting time or convenience above LB's interest in receiving proper medical care. In weighing the competing concerns, the court found LB could receive adequate services in Yuma and that, although travel to Phoenix would be needed, the children would benefit from continuing to live in Yuma near *both* parents, where they were well-adjusted and financially stable. We must defer to the court's decision on how to weigh these concerns.

**¶20** In sum, the superior court was within its discretion in concluding that the existence of "more and better medical facilities in San Diego" did not trump all other considerations in this case. Although Mother asks this court to balance these considerations differently, "[o]ur duty on review does not include re-weighing conflicting evidence or redetermining the preponderance of the evidence." *Hurd*, 223 Ariz. at 52, ¶ 16. The court's findings were reasonably supported by the evidence.

**¶21** Father requests an award of attorney's fees on appeal under A.R.S. § 25-324 (2019). On the record presented, we have no grounds to award fees under this statute and deny his request.

**CONCLUSION**

**¶22** We affirm the order denying the petition to relocate.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

Moreover, she does not explain how, given Father's finances, he could afford to exercise his parenting time in San Diego while continuing to live in Yuma.