NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JENIFER AYCOCK NELSON, *Petitioner/Appellee,*

*v.*

STEVEN RICHARD NELSON, *Respondent/Appellant.*

No. 1 CA-CV 25-0045 FC
FILED 05-04-2026

Appeal from the Superior Court in Maricopa County
No. FN2021-050782
The Honorable James Knapp, Judge

**AFFIRMED**

COUNSEL

Scottsdale Family Law PLLC, Scottsdale
By Robyn Barrett
*Co-Counsel for Petitioner/Appellee*

Reardon House Colton PLC, Scottsdale
By Taylor S. House, Sally M. Colton
*Co-Counsel for Petitioner/Appellee*

Adam C. Rieth PLLC, Mesa
By Adam C. Rieth
*Counsel for Respondent/Appellant*

_____

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge D. Steven Williams joined. Judge Andrew M. Jacobs concurred in part and dissented in part.

_____

**C A T L E T T**, Judge:

¶1            Steven Richard Nelson ("Husband") appeals the superior court's Domestic Relations Order ("DRO") allocating community pension benefits.  We conclude we have jurisdiction over Husband's appeal, and we affirm the DRO because the court did not abuse its discretion in rejecting Husband's proposed remedies after Jennifer Aycock Nelson ("Wife") violated the court's decree of dissolution.

**FACTS AND PROCEDURAL HISTORY**

¶2            Wife petitioned to dissolve her marriage to Husband.  In January 2023, the superior court issued a decree ("Decree") doing so.

¶3            In dividing the parties' assets, the court found Husband owned an individual retirement account ("IRA") and Wife owned a pension through the Arizona State Retirement System ("ASRS Pension"), designated both community property, and awarded half to each party.  The court ordered the parties to select a "qualified person" to prepare any "necessary qualified domestic relations orders" by February 6, 2023.  The court ordered the individual selected as a special master to "make recommendations to the Court as to whether [Husband] should be awarded a survivor benefit."  The court also instructed the special master to "identify the cost for the election of a survivor benefit and, if appropriate, [to] allocate the cost thereto."  The Decree required both parties to "cooperate" by "diligently provid[ing] all plan statements necessary[.]"

¶4            In May 2024, Husband and Wife chose a special master. When an individual participating in ASRS retires, that individual may select either a life annuity or a survivor annuity.  Husband wanted Wife to select the survivor annuity, but Wife disagreed.  Husband argued Wife earned the entire value of the ASRS Pension during their marriage, the ASRS Pension made up the bulk of the community's retirement assets, and Wife was likely to predecease him due to health issues.  Wife opposed

selecting a survivor benefit because that option would reduce her monthly benefit and prohibit her from leaving a survivor benefit to a potential future husband.

**¶5** Initially, the special master favored Husband's argument. But before completing her report, the special master discovered that Wife had retired a year earlier (in May 2023) and selected the life annuity option without a survivor benefit. The special master explained that before discovering Wife had retired and selected a life annuity, the special master believed the DRO should include a survivor benefit and reduce Husband's monthly benefit to offset any reduction in Wife's benefit. But the special master concluded Wife's selection was irreversible, rendering the survivor benefit issue "somewhat" moot. The special master instead recommended awarding Husband half of any payments or distributions from the ASRS Pension during Wife's life. The court signed the special master's recommended DRO.

**¶6** Husband asked the court to vacate the DRO because the court signed it before his deadline to object. The court agreed, granted Husband's motion, and ordered briefing on whether it should accept the special master's recommendation. Husband argued the special master should have been the one to decide whether he received survivor benefits, not Wife. He requested an order changing the ASRS Pension from a life annuity to a "50% joint and survivor annuity." Alternatively, he requested that the court award him the full value of his IRA and require Wife to obtain an insurance policy on her life naming him the sole beneficiary. He also suggested that the court allow Wife to reduce the amount of the policy each year she did not predecease him. Wife responded that Husband's argument was moot because she had already retired and selected the life annuity option and did not violate any court order in so doing.

**¶7** The court issued two orders and a minute entry. The court issued a new DRO awarding Husband half of any benefits from Wife's ASRS Pension accrued during marriage, to be paid monthly during Wife's life. The DRO recited that "no further matters remain pending and that judgment is entered under Rule 78(c)." The court also issued a clarifying order about Husband's IRA. Lastly, the court issued a minute entry explaining it was "unpersuaded" by Husband's arguments. The minute entry instead adopted the special master's reasoning "in full" but required Wife to compensate Husband for benefits paid since her retirement. The court did not sign the minute entry or include any finality language. Husband appealed.

## JURISDICTION

**¶8** Husband's notice of appeal states he is appealing from the superior court's clarifying order, the DRO, and the minute entry. In her answering brief, Wife argues we lack jurisdiction because the orders were not final, and they are not special orders issued after final judgment. Two weeks after Wife filed her answering brief, Husband asked this court to stay the appeal to obtain an order with a signature and Rule 78(c) finality language. This court granted the stay request and revested jurisdiction in the superior court.

**¶9** In a new minute entry, the superior court explained that none of the three documents it entered were final judgments, and it admitted to causing "confusion" by including Rule 78(c) finality language in the DRO and not signing the minute entry. The court explained that the clarifying order, DRO, and minute entry were now "signed as formal orders of the Court, nunc pro tunc." The court stated that "no further matters remained pending" on the date of the original minute entry. The court also signed the new minute entry "as a formal order[.]" This court lifted the stay but expressed no "opinion regarding whether any rulings are substantively appealable."

**¶10** We have a "duty to determine whether [we have] jurisdiction to consider an appeal." *Sorensen v. Farmers Ins. Co. of Ariz.*, 191 Ariz. 464, 465 (App. 1997). "[T]he inclusion of Rule 78 language alone does not make a judgment final and appealable[.]" *In re Marriage of Chapman*, 251 Ariz. 40, 43 ¶ 10 (App. 2021).

**¶11** We conclude we have jurisdiction over the DRO and the minute entry explaining it. In *Boncoskey v. Boncoskey*, the superior court entered a separate order adopting a special master's recommendation about how to allocate an ASRS account "but contemplated the . . . entry of the DRO." 216 Ariz. 448, 450–51 ¶¶ 7–9, 12 (App. 2007). We concluded that "once the court issued the DRO, the DRO became a final appealable order" because it was a special order made after judgment. *Id.; see Caswell v. Caswell,* 255 Ariz. 356, 358 ¶ 5 (App. 2023) (stating a stipulated DRO was "an appealable order under A.R.S. § 12-2101(A)(2)"). We see no difference here. Although the court filed its minute entry adopting the special master's report two days after entering the DRO, the court signed the DRO and recited that "no further matters remain pending and that judgment is entered under Rule 78(c)." The DRO and the minute entry adopting the special master's recommendation are special orders made after final judgment. In a timely notice of appeal, Husband explained he was

4

appealing the DRO and the minute entry. We have jurisdiction. *See* A.R.S. § 12-2101(A)(2).

## DISCUSSION

### I. ASRS Pension

**¶12** Husband argues the superior court abused its discretion in allocating the ASRS Pension because the DRO does not provide "protection against Wife predeceasing him[.]" We review the court's apportionment of retirement benefits for an abuse of discretion. *Boncoskey*, 216 Ariz. at 451 ¶ 13. "'Abuse of discretion' is discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Tilley v. Delci*, 220 Ariz. 233, 238 ¶ 16 (App. 2009). We view the evidence in a light most favorable to upholding the superior court's decision and will affirm if reasonable evidence supports the decision. *Kohler v. Kohler*, 211 Ariz. 106, 107 ¶ 2 (App. 2005).

**¶13** Husband emphasizes that the special master acknowledged that he wanted survivor benefits. He argues Wife violated the Decree by retiring and unilaterally selecting the life annuity option. We interpret the language in the Decree de novo. *Merrill v. Merrill,* 230 Ariz. 369, 372 ¶ 7 (App. 2012).

**¶14** The superior court did not expressly decide whether Wife violated the Decree. The court, instead, explained it was "unpersuaded that it should order the remedies proposed by Husband based on the circumstances, to include an unequal distribution of the IRA account or a requirement that Wife obtain a life insurance policy with Husband as the beneficiary." So it appears the court implicitly found that Wife violated the Decree but exercised its discretion not to impose either remedy Husband proposed.

**¶15** We agree with the court's implicit conclusion that Wife violated the Decree. Wife is correct that the Decree did not expressly prohibit her from retiring or, once she did, selecting a life annuity. But the Decree ordered the parties to evenly split the costs to prepare a DRO. It also ordered the parties to select a "qualified person" to prepare a DRO. And the court appointed the person selected as special master "[t]o the extent there *may* be survivor benefits" to "make recommendations to the [c]ourt as to whether [Husband] should be awarded a survivor benefit." (Emphasis added).

¶16          The parties were required to have the DRO prepared by February 6, 2023. Wife delayed in agreeing to a special master by seeking an appellate stay of the Decree's special master provision, and Wife retired in May 2023 but only later told the special master she had done so. Before learning that information, the special master would have recommended that the DRO require Wife to select a survivor benefit to provide Husband with continued pension payments should Wife pre-decease him. But after the special master learned Wife had retired, and that no survivor benefit was possible, the special master said Wife's actions made the possibility of a survivor's benefit "moot[.]"

¶17          A divorcing spouse possesses an "immediate, present, and vested interest" in retirement benefits awarded to them in divorce, regardless of whether those benefits are mature or not. *Koelsch v. Koelsch*, 148 Ariz. 176, 181 (1986). An ex-spouse may not prevent the other from receiving the benefits of property awarded in a divorce decree. *Id.* ("[I]t is a settled principle that one spouse cannot, by invoking a condition wholly within his control, defeat the community interest of the other spouse.") (citation omitted); *see also Birt v. Birt*, 208 Ariz. 546, 556 ¶ 37 (App. 2004) (trial court may modify a dissolution decree when an ex-spouse attempts to prevent the other spouse from receiving the benefits of property awarded in divorce).

¶18          Even if a survivor benefit is not, in and of itself, a community asset, the court recognized that it was a material component of Husband's interest in community retirement benefits. And the court therefore established a process for determining whether Husband should be awarded survivor benefits. It is evident that the Decree did not allow Wife to retire and unilaterally choose a life annuity, thereby rendering moot one material reason for appointing a special master to propose a DRO. Wife's decision to retire and select a life annuity without consulting Husband, the Special Master, or the court violated the Decree.

¶19          We therefore turn to whether the court abused its discretion in not adopting Husband's proposed remedies. Husband requested that the court enter an order changing the ASRS Pension from a life annuity to a "50% joint and survivor annuity." Alternatively, he requested that the court award him his entire IRA and require Wife to obtain and pay for a life insurance policy naming him as the sole beneficiary. He explained that Wife could reduce the policy amount each year by the value of the survivor benefits not used and the amount of expenses Husband did not incur for which he would have been responsible, based on his own life expectancy.

¶20            Husband provided no authority supporting that the court could retroactively order the ASRS Pension converted from a life to survivor annuity.  Husband acknowledges Wife retired in May 2023 and that more than sixty days passed before they hired the special master.  Under ASRS, "[a] member may exercise a *onetime* election to make changes to the retirement application *within sixty days* after the member's retirement date."  A.R.S. § 38-764(H) (emphasis added).  The special master opined that "[n]ow that Wife did elect a life annuity, such election cannot now be changed."  Husband provided no contrary authority supporting that the superior court could order the sixty-day election deadline extended after it had expired.

¶21            Husband also provided no evidence about the viability and expense of requiring Wife to procure a life insurance policy.  Husband did not submit evidence about the present cash-value of the ASRS Pension (including Wife's life expectancy), which was required to know how much life insurance Wife would need to obtain and for how long.  Husband did not submit evidence about his own life expectancy, which would also be required to determine an accurate policy amount to cover what Husband would have expected to receive in survivor benefits.  Husband did not show that Wife could obtain any life insurance policy, let alone in the amounts required to approximate what Husband would have received in survivor benefits.  This was important considering Husband's assertion that "[t]here is a real possibility that Wife will predecease Husband because of her many health issues."  Even if Wife could procure a life insurance policy in the correct amount, Husband submitted no evidence about how much the necessary policy would cost.  Husband criticizes the superior court for not setting an evidentiary hearing, but the record does not show he requested one.  Without some evidence that insuring Wife's life was viable and not cost prohibitive, the superior court did not abuse its discretion in refusing to compel Wife to do so.

¶22            In fact, ordering Wife to procure a life insurance policy post-Decree could have undercut the "compelling policy interest favoring the finality of property settlements."  *See Reed v. Reed*, 124 Ariz. 384, 385 (App. 1979).  Had the court ordered Wife to select a survivor benefit, her monthly payment from the ASRS Pension would have decreased, which is why the Special Master suggested that Husband would have to compensate Wife for such reduction.  *See* A.R.S. § 38-760(B)(1) (listing the option of a "[j]oint and survivor life annuity in a reduced amount payable to the retiring member during life").  But requiring Wife to procure a life insurance policy would have had the same effect (the expense for premiums would have reduced the amount of funds available to her), and yet Husband did not suggest that

7

he would cover any of the cost for Wife to obtain insurance. To the contrary, Husband requested that the court allow him to retain the full value of his IRA, which was split 50/50 in the Decree. The record does not indicate how the insurance option Husband proposed would have globally impacted the court's prior property allocation or the net amount of income Wife would receive under the ASRS Pension. So we take no issue with the court simply maintaining the status quo at the time of the DRO, especially considering the limited information Husband provided to show that his alternatives were viable and equitable.

¶23 Husband cites *Hoobler v. Hoobler*, 254 Ariz. 130 (App. 2022), to highlight that we have "upheld the use of an insurance policy to mitigate" the risk of one spouse predeceasing another, which would otherwise prevent the living spouse from receiving "a full pay out" of a retirement account. But *Hoobler* stands only for the proposition that the superior court *may* use a life insurance policy to mitigate the effect of one spouse predeceasing another. *See* 254 Ariz. at 138 ¶ 17 ("The court did not abuse its discretion in developing a hybrid method of distributing the retirement accounts."). *Hoobler* does not *require* the court to do so in all circumstances.

¶24 In any event, the superior court in *Hoobler* was armed with much more information than the court was here. For example, the superior court in *Hoobler* was presented with evidence of the present cash-value of the pension—"where the present value of the pension is calculated actuarially." *Id.* at 137 ¶ 10. Based on that value, the court concluded that the husband should "obtain a ten-year $1,000,000 life insurance policy naming [w]ife as owner and beneficiary." *Id.* And it appears the court knew that procuring such a policy was an option and what the cost of doing so would be because it ordered the parties to "share the cost of the premium for the first five years, and then [w]ife would be responsible for it." *Id.* Here, the superior court did not know the present cash-value of the ASRS Pension, whether Wife had the ability to procure life insurance in the necessary amount, and, even if she did, what it would cost her to do so.

¶25 To be sure, our supreme court has instructed courts "to be as creative and flexible as possible, within the guidelines[.]" *Koelsch*, 148 Ariz. at 185. But Husband has not shown that the options he proposed were viable or equitable or that the court abused its discretion in simply maintaining the property allocation reflected in the Decree.

## II.    Attorney Fees at the Superior Court

**¶26**        Husband argues the superior court abused its discretion by not awarding him attorney fees stemming from the parties' dispute about the allocation of the ASRS Pension.  We review the court's attorney fees decision for an abuse of discretion.  *Mangan v. Mangan*, 227 Ariz. 346, 352 ¶ 26 (App. 2011).  The superior court may award reasonable attorney fees "after considering the financial resources of both parties and the reasonableness" of their positions.  A.R.S. § 25-324(A).

**¶27**        Husband contends Wife forced him to "further pursue alternative remedies" to protect his interests but concedes there is a "lack of disparity in income" between himself and Wife.  The court made the same factual finding about the lack of disparity of income in the Decree.  And Husband has not demonstrated that Wife took unreasonable positions, especially considering she was (and remains) the successful party.  The court did not abuse its discretion in declining to award Husband attorney fees.

### ATTORNEY FEES AND COSTS ON APPEAL

**¶28**        Both Husband and Wife request attorney fees and costs on appeal under A.R.S. § 25-324.  We exercise our discretion to deny both fee requests because neither party showed a disparity of resources and neither took unreasonable positions on appeal.  We award Wife, as the successful party, her appellate costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

**¶29**        We affirm the DRO.

**J A C O B S,** Judge, concurring in part and dissenting in part:

**¶30**        I join in Paragraphs 1 through 18 of my colleagues' decision in this matter, which are well-reasoned.  I agree that Jennifer Nelson ("Wife") violated the Decree by secretly defeating the prospect of the equitable division of the marital community's retirement assets.  I part company from my colleagues in how to deal with Wife's breach of the Decree.

¶31            Why?  Wife effected an unequal division of community property by fundamentally altering the largest remaining asset in the marital estate.  The superior court's divorce decree had already ratified an equal division of all other community assets, leaving only two retirement accounts – of which Wife's ASRS account was easily the largest – for final allocation.  By irrevocably electing a pension option that eliminated a survivor benefit before the division was effectuated, Wife transmuted that final and most important asset.    When the court affirmed that transmutation, it sanctioned an unequal division of assets.  The distribution that resulted violated the court's prior decree and Arizona's requirement of substantial equality.  *See* A.R.S. § 25-318(A); *Toth v. Toth*, 190 Ariz. 218, 221 (1997).  I would remand for further consideration of an appropriate remedy for Steven Nelson's ("Husband") proper and well-preserved objection to the unequal division of the community's property.

## FACTS AND PROCEDURAL BACKGROUND

¶32            In January 2023, the superior court issued a decree dissolving the marriage of Husband and Wife and ordering an equal distribution of their community property ("Decree").    The court acknowledged that "[o]nly rarely is unequal division of community property appropriate" and found that this case did not present a "unique set of facts or circumstances" justifying an unequal division.

¶33            Consistent with our law's requirement of substantial equality, the court equally distributed the following community assets:  (1) net proceeds from the sale of the marital home, valued at $278,786; (2) the net proceeds, debts, business account balances, and potential liabilities from the family business; (3) all household property, divided by creating a list of all household property and making alternate selections; (4) proceeds from the sale of a 2013 Honda Accord, if title is not transferred to the parties' son; (5) all community debts, including personal loans, credit cards, and judgments, valued at a total of $56,390.90; and (6) any refunds or taxes owed from taxes filed for years 2017 through 2021.

¶34            Two significant assets remained to be divided: Husband's IRA, valued at $73,956 and Wife's ASRS pension account, valued at $252,697.  The court awarded half of what could be identified as the community portion of each retirement account to each party.  To effectuate that division, the court ordered the parties to retain a Qualified Domestic Relations Order ("QDRO") drafter.  The court addressed any survivor benefits associated with the accounts, ordering that "the QDRO drafter shall be appointed as a Rule 72 Special Master to make recommendations

to the Court as to whether the non-employee spouse should be awarded a survivor benefit." Ariz. R. Fam. Law P. 72.

¶35            In May 2024, Husband and Wife entered into a Rule 69 agreement, hiring Georgia Wilder as the Rule 72 Special Master. Ariz. R. Fam. Law P. 69. The parties provided the Special Master with their respective positions regarding the survivor benefit associated with Wife's ASRS pension.

¶36            Husband requested that he receive a survivor benefit due to the likelihood that Wife would predecease him and given the substantial disparity between the value of the ASRS account and his own IRA. Wife opposed this because a survivor benefit would reduce her monthly pension benefit and would limit her ability to leave a survivor benefit in the future. The Special Master ultimately concluded that the equitable resolution required Wife to provide Husband a 50% survivor benefit, with Husband covering the reductions in the monthly pension payments attributed to that election.

¶37            The Special Master's proposed equitable division of the ASRS account was made impossible by Wife's actions. In May 2023, after the Decree was entered, Wife retired and told no one. When she did so, she irrevocably selected a pension plan with no survivor benefit. After learning of Wife's election, the Special Master concluded the survivor benefit was moot. Instead, the Special Master recommended awarding Husband 50% of Wife's monthly pension payments, though she did not make a finding that this was an equitable division.

¶38            Husband objected to the Special Master's recommendation, asserting that Wife's unilateral election of a pension with no survivor benefit deprived him of "the full value of his share of [Wife's] pension." Husband requested that the court direct Wife to change the ASRS survivor benefit option to a 50% joint and survivor annuity. Alternatively, Husband requested that Wife prepare a life insurance policy naming him as the beneficiary, based on the value of the ASRS plan and Husband's life expectancy.

¶39            The court denied Husband's objection and requested relief. In doing so, it "adopt[ed] the reasoning of the 9/30/2024 Special Master Report and Recommendation in full," but found Husband's arguments unpersuasive. The court did not address Wife's retirement, the ASRS pension's potential survivor benefit, or decide that the resulting distribution was equitable.

## DISCUSSION

¶40        In a dissolution proceeding, courts must divide community property equitably.  A.R.S. § 25-318(A).  This fundamental rule generally requires a substantially equal division of all community property.  *Toth*, 190 Ariz. at 221.  Property acquired during the marriage is presumptively community property subject to division.  A.R.S. § 25-211.  That presumption applies to both vested and unvested property interests.  *Howie v. Howie*, No. 1 CA-CV 23-0587, 2025 WL 1711285, at *7 ¶ 35 (Ariz. App. June 19, 2025) (mem. decision); *Johnson v. Johnson*, 131 Ariz. 38, 41 (1981).

¶41        Here, the court faithfully applied the rule of equal division to nearly every asset in the marital estate: the proceeds from the sale of the marital residence, the family business, household items, community debts, tax liabilities and refunds – down to the parties' 2013 Honda Accord.  But when it came to the parties' most significant assets, their retirement accounts, the court did not complete the division.  Though the court awarded each party one-half of the community portion of the retirement accounts, it delegated to a Special Master the implementation of that division, including the determination of any associated future interests.  *Walker v. Walker*, 256 Ariz. 295, 299 ¶ 12 (App. 2023) (holding that retirement plans are community property subject to division upon dissolution).

¶42        The court's delegation of this task to a Rule 72 Special Master was not unilateral.  Husband and Wife stipulated to the appointment and compensation of Georgia Wilder as Special Master through a Rule 69 agreement.  Ariz. R. Fam. Law P. 69.  Wife expressly agreed to submit the division of her ASRS pension, including any associated future interests, to the Special Master's recommendation.

¶43        Wife's subsequent retirement election undermined the Decree's mechanism for achieving an equitable division of the retirement assets.  The Decree directed that the Special Master make recommendations concerning survivor benefits associated with the retirement accounts.  Wife was therefore put on notice that the survivor benefits associated with her ASRS account would be subject to the Special Master's evaluation.  By electing a pension benefit before the Special Master could fulfill that charge, Wife circumvented the Decree's process and contravened the Rule 69 agreement in which she stipulated to the Special Master's appointment.

¶44        "[I]t is a 'settled principle that one spouse cannot, by invoking a condition wholly within his control, defeat the community interest of the other spouse.'"  *Koelsch v. Koelsch*, 148 Ariz. 176, 181 (1986) (quoting *In re Marriage of Stenquist*, 21 Cal. 3d 779, 786 (1978)).  Wife's

election did precisely that. Wife violated the decree by fundamentally limiting and recharacterizing the single most important asset in the marital estate. By irrevocably electing a pension option that eliminated any survivor benefit, Wife altered not merely the form of the ASRS funds, but the substantive value of the community interest awarded to Husband. The community's interest in the ASRS pension included not only the monthly payments during the life of the parties, but the contingent survivor component that would preserve the value of that asset should Wife predecease Husband. Once extinguished, the asset was no longer the same asset the court had ordered to be divided equally.

¶45 The court erred by adopting the Special Master's recommendation without addressing the effect of Wife's unilateral conduct on the equitable division mandated by A.R.S. § 25-318(A). *See Tilley v. Delci*, 220 Ariz. 233, 238 ¶ 16 (App. 2009) ("'Abuse of discretion' is discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.").

¶46 The Special Master had initially concluded that awarding Husband a 50% survivor benefit would achieve equity. After Wife's election rendered that option impossible, the recommendation shifted to awarding Husband 50% of Wife's monthly pension payments, without determining whether that revised division remained substantially equal. The court reviewed and adopted this recommendation in full, without finding that the changed division remained equitable. Nor did the court reconcile the changed division with its prior ruling that unequal division was not justified by any unique facts or circumstances. *See Inboden v. Inboden*, 223 Ariz. 542, 547 ¶ 18 (App. 2010) (examining factors that justify an equal division of property). Instead, it accepted a recommendation that acknowledged the survivor benefit was "moot," without examining the consequences. This amounts to saying the court didn't need to figure out whether the new division was equitable in light of the changes Wife unilaterally effected, which was error.

¶47 "A divorcing spouse possesses an 'immediate, present, and vested interest' in retirement benefits awarded to them in divorce, regardless of whether those benefits are mature or not, realized, or contingent." *Riley v. Tolmachoff*, No. 1 CA-CV 24-0101, 2024 WL 4679118, at *2 ¶ 14 (Ariz. App. Nov. 5, 2024) (mem. decision) (quoting *Koelsch*, 148 Ariz. at 181). That principle necessarily encompasses any survivor benefit attached to Wife's ASRS pension plan. When Wife extinguished the survivor component of her pension plan before the Special Master could affect its equitable allocation, she removed a community asset that was meant to be divided equally. The court's ratification of that result with no

other justification than "adopt[ing] the reasoning of the 9/30/2024 Special Master Report and Recommendation in full," was error.

¶48        Husband's objection to the Special Master's report had merit because he had a vested interest in the ASRS plan's survivor benefits. *Koelsch*, 148 Ariz. at 181. The survivor benefit was not dependent upon Wife's goodwill in maintaining that asset – it was part of the divisible community estate. Once the Decree awarded each party one-half of the community portion of the retirement accounts, Husband acquired a legally protected interest in the full value of that award. The proper course was to restore the parties, as closely as possible, to the substantially equal division the court previously determined was required.

¶49        Arizona law recognizes that alternative mechanisms may be used to create equity when an asset cannot be equally divided in its original form. In *Hoobler v. Hoobler*, 254 Ariz. 130, 135 ¶¶ 1-2 (App. 2022), this Court approved the use of a life insurance policy as an appropriate vehicle to secure pension benefits when a direct division was impracticable. In *Birt v. Birt*, 208 Ariz. 546, 552 ¶ 25 (App. 2004), we held that a superior court had the authority to modify a decree when a spouse's conduct in filing for bankruptcy created a substantial injustice in asset division. In *Merrill v. Merrill*, 230 Ariz. 369, 371-73, 375 ¶¶ 1, 7, 12, 19 (App. 2012), we affirmed the superior court's ruling that a husband could not unilaterally waive his retirement benefits where the decree awarded his wife one-half of his retirement, and required him to indemnify her for the destruction of her interest. These cases reflect the superior court's authority to impose corrective measures when one party's conduct frustrates equal division.

¶50        The majority argues the court lacked sufficient information regarding the ASRS pension's cash value or the feasibility of Wife obtaining life insurance, and faults Husband for failing to supply it. But that information gap only arose because Wife unilaterally altered the asset after the Decree and before implementation. Equity does not permit the party that frustrated the division to benefit from the resulting uncertainty. *See Martin v. Martin*, 156 Ariz. 452, 458 (1988) (adopting rationale that "one spouse may not dissipate the marital property and avoid the inclusion of the value of the dissipated property in the total estate" and holding "the superior court, in a dissolution proceeding, is authorized to award a spouse a sum of money representing the value of his or her interest in community or commonly held asserts which are not available for division due to the . . . destruction . . . of such assets by the other spouse."). Additionally, once Husband objected to the Special Master's recommendation and proposed remedial options, the court had the authority and discretion to request additional evidence, or to remand to the Special Master for actuarial

findings regarding the ASRS pension's value.  But it did nothing further, given that it incorrectly determined that further analysis of the subject was "moot."

¶**51**        By declining to undertake that inquiry and instead adopting a recommendation that treated Wife's destruction of the survivor benefit as inevitable, the court allowed Wife to reallocate assets in a manner that defeated equity and rewarded her unilateral conduct that destroyed a community asset.  That result is incompatible with A.R.S. § 25-318(A) and the Decree's commitment to equal division.  I would remand to direct the superior court to take such evidence so as to allow the court to equitably divide the now fundamentally-altered retirement benefits.  Our hands are not tied.  There is no reason to ratify Wife's improper self-help.  I respectfully dissent.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JT